Burks, J.
This is a supersedeas allowed by one of the judges of this court to a judgment rendered by the corporation court for the city of Lynchburg in behalf of Bettie J. Kinnier, administratrix of Alexander Kinnier, (defendant in error), against the plaintiff in error, the Georgia Home Insurance Company, ■a corporation created by the state of Georgia.
The action was assumpsit on a policy issued by the plaintiff in error, insuring the said Alexander Eunnier and his “legal representatives to.the amount of |2,000, •against loss by fire on a dwelling house situate on Da *90 niel’s hill in the city of Lynchburg, and to the amount, of $1,000 against like loss on household furniture and other personal property contained in said building.. The plaintiff in her declaration alleged the destruction of the building by fire, and claimed the amount of the-insurance upon it. The defendant demurred to the declaration, and also pleaded the general issue. The demurrer was overruled, and on the trial of the issue-by the jury the plaintiff and defendant both moved for instructions.
The first instruction asked for by the defendant was refused by- the court, and a bill of exceptions was-taken to the refusal. This is bill “Wo. 1” in the record.
The defendant then asked for eight other instructions. The court refused to give the fifth, sixth and seventh; and also refused to give the first, second,, third, fourth and eighth in the form in which they were asked, but gave them with modifications of each ; and also gave three asked for by the counsel for the plaintiff. To this ruling of the court the defendant’s-counsel excepted, and the instructions refused, and, as given with modifications, are found in the bill of exceptions “Wo. 2.” By this bill all the evidence off both parties is made a part of the record.
The jury found a verdict for the plaintiff for $2,000,, with interest from the first day of April 1871. The defendant thereupon moved for a new trial, upon the ground that the verdict was contrary to law and the evidence. The motion was overruled, and a bill of exceptions, “Wo. 3,” was taken, in which the facts were certified.
The first assignment of error is to the judgment of the court overruling the demurrer, and this may be most conveniently disposed of in this connection.
*91 The first, and I suppose the chief objection made to the declaration is, that the action was improperly brought by the administratrix, and could only be maintained by and in the name of the heirs of the plaintiff’s intestate.
The declaration alleges that “the defendants entered into and duly executed a certain writing, commonly called a policy of insurance, and delivered the same to the plaintiff, wherein and whereby in consideration of the receipt of $37.50 paid by the plaintiff to the defendants, the said Georgia Home Insurance Company did insure the said Alexander Kinnier and his legal representatives $3,000, &c.”
It is contended that by the terms “ legal representatives,” used in the declaration pursuing the tenor of the policy, the heirs at law of Alexander Kinnier were intended, so far as the insured building is concerned. I do not think this is the proper construction of the policy. The policy declared upon, and as set out, is a contract to indemnify Alexander Kinnier personally. The words “legal representatives,” as used, are of the same import as the words executors, administrators, personal representatives. The policy as set out is a simple contract; and upon the death of Alexander Kinnier, passed like his bonds, notes, and other choses in action to his administratrix; and she only had a right of action upon it.
We have been referred by the counsel for the plaintiff in error in support of his objection, to the case of Haxall's ex’ors v. Shippen & wife, 10 Leigh 536. That case involved incidentally the construction of a covenant for insurance entered into by the Mutual Assurance Society, a corporation created by the laws of this state. The covenant in terms stipulated for payment in case of loss to the assured, “his heirs and as *92 s^Sns;” an¿ it was construed in a chancery suit, in which the form of proceeding was not a question, as a covenant real, which enured to the benefit of the heir. Whatever may have been the proper construction of coveuant in that case, I do not think the policy in this case can be properly construed as intended to enure to the benefit of the heirs. However that may be, the statute (Code of 1873, ch. 126, § 19) it seems would give the administratrix the right to maintain this action.
The second objection seems to be based upon a misconception. The declaration substantially alleges a contract made and entered into by the defendant with the plaintiff’s intestate, the consideration of which (the premium) is stated to have been paid by the plaintiff, and by fair intendment to have been paid by her in her representative capacity.
The.remaining objections, the one specially set out in the demurrer, and the other assigned as error in the petition, seem to be merely formal, and do not require any special notice. I am of opinion there was no error in overruling the demurrer.
The policy in this case, as is usual in such writings, contains a multitude of conditions, exceptions, limitations and restrictions, amongst which are the following, which I number for convenient reference:
***** “ The company is not liable, 1. * * * * for loss, if there is other prior or subsequent insurance, without written consent of this company.
2. And if the title of the property is transferred or ■changed, or the policy is assigned without written permission hereon, the policy shall be void.
3. And the entry of a foreclosure of a mortgage, or the levy of an execution, shall be deemed an alien *93 ation of the property, and this company shall not be holden for loss or damage thereafter.
4. .* * * * This policy snah be vitiated * * * * if the premises hereby insured become vacated by the removal of the owner or oecupant for a period of more than twenty days, without immediate notice to the company and written consent.
5. Any change within the control of the assured, material to the risk, shall avoid this policy.
6. All persons having a claim under this policy shall give immediate notice of the same, and within thirty days render a particular account thereof, with an affidavit stating time, circumstances, and cause of fire, the whole value and ownership of the property assured, the amount of the loss or damage, other insurance, if any, and copies of the written portion of all policies; if required, shall produce books of account and other proper vouchers, and be examined under oath touching all questions relating to the-claims, and subscribe such an examination when reduced to writing; and a refusal to answer any such question shall cause a forfeiture of all claims by the-parties; and, until sixty days after such proofs are rendered, the loss shall not be payable. * * *
7. This policy shall not be valid until the premium has been paid to and the policy countersigned by the duly authorized agent at Lynchburg, Va.”
The policy was signed by the president and secretary of the company, and under their signatures was the following: “Countersigned at Lynchburg, Ya., this the 12th March, A. D. 1870. T. JEL Ivey, agent.”'
The defence of the company before the jury consisted in an effort to defeat the recovery sought by the plaintiff by attempting to prove a violation or breach. *94 by the plaintiff of the several conditions and stipulaA x tions above set forth and enumerated.
It appears from the evidence that the policy was issued on the 12th day of March 1870, through I76}’; the agent at Lynchburg, and the risk, as provided by the policy, was to commence on the 13th day of March 1870, at 12 o’clock, noon, and end on the 13th day of March 1871, at 12 o’clock, noon. It was not, however, delivered on the day of its date, nor indeed was it ever delivered to Alexander Kinnier, the insured, but was retained by Ivey, the agent, in his possession for more than two months after it was executed. ISTor did Kinnier pay the premium for the insurance. Ivey says, that at the time when the policy was executed Kinnier told him that he did not have the money with which to pay the premium, and that he (Ivey) told Kinnier it made no difference; that at the end of the month he would settle with the company. Kinnier died on the 1st day of April following. Mrs. Kinnier, the wife of the decedent, (the defendant in error), became his administratrix, and made sale of the personal effects of her intestate, including the personal property insured, on the 19th day of May. On the 30th day of the same month (May), J. M. Gordon, the •agent of the administratrix, paid the premium on the policy to- Ivey, took Ivey’s receipt for it, and Ivey at the same time delivered the policy to Gordon, having previously threatened Gordon with the cancellation of the policy if the premium was not paid. On the day of the sale of the personal property, Mrs. Kinnier (the administratrix) who, with her family, had occupied the insured tenement from the time of her husband’s death until that day, vacated it, leaving no occupant; nor was it ever occupied at any time there *95 ■after. Tom Watson (a colored man) as a tenant, oc- ' ' •cupied the kitchen, an out-building on the same lot on which the insured tenement stood, and within fifteen or twenty feet from it, and the evidence tended to show that Watson was charged with the care of the insured building, and continued in charge of it until the 2nd of November following (1870), when it was wholly destroyed by fire in the night time and, as supposed, by an incendiary.
Soon after the sale before mentioned, to wit : in the month of June, the creditors of the decedent (Kinnier) filed a bill in the corporation court of Lynchburg against the widow and heirs of said decedent for a sale of his real estate and payment of their debts out of the proceeds. A decree was accordingly made for the sale on credit of said real estate, including the lot on which the insured building was situate. The decree in express terms provided, that the commissioner ordered to make the sale should, at the time of sale, publicly announce “that no sale under the decree should be valid until ratified by the court.” The sale, as ordered, was made on the 8th day of July following, and A. li. Woodroof became the purchaser of the lot on which the insured building stood. The salé was reported to the court, and the commissioner in his report stated that the public announcement required by the decree was made at- the time of the ■sale. Exceptions were filed to the report and sale by some of the parties in interest (not the purchaser) on account of alleged inadequacy of price, which exceptions were afterwards sustained by the court, and the sale was vacated. Woodroof (the purchaser) was never let into possession of the premises. After the purchase, however, he took out a policy of insurance in the “Liverpool, London and Globe Insurance *96 Company” on the dwelling-house, the same on which the policy, which is the foundation of this suit, had been issued. The policy issued to 'Woodroof was. upon condition, that it should be cancelled if the court did not confirm the sale which had been made to him.
The evidence proved that T. EL Ivey was the agent of the company, and tended to show that he was a general agent, with power to receive and accept proposals for risks, subject to the approval and ratification of his principal, to issue and deliver policies, and renew and cancel the same, and that he was supplied with blanks for proofs of loss. It further tended to show that he was present when the personal property insured was sold by the administratrix—knew that the insured building had been vacated, and that it was expected to be sold—that he had this knowledge when on the 80th day of May he collected the premium from the agent of the administratrix and delivered the policy to him; and the agent of the administratrix testified that at the time the premium was paid, and the policy delivered, he inquired of Mr. Ivey “if the policy was all right, and if the house was burned would the money be paid,” to which Ivey replied “it was all right, and the money would be paid,” and that at the same time when told by the agent aforesaid that Mrs. Kinnier had gone away, that the family had broken up, the personalty had been sold, and the real estate would be sold, and that a servant was on the premises in charge, and was asked by said agent whether it would be all right, Ivey replied that “ it would.”
It further appears by the evidence, that immediately after the house was burned, the company’s agent (Ivey) of his own accord sent a notice of the loss to- *97 the company, and the agent of the administratrix testified that soon after the fire he applied to Ivey to furnish him with blank forms for proofs of loss, inquired of him whether lapse of time would make any difference, and Ivey replied that “it would not:” and that after he procured the blanks, to wit, about the first day of February 1871, they were filled up and delivered to Ivey, and Ivey testified that he sent them to the company. It does not appear that the company ever made any objection as to the proofs of loss, or as to the time in which they were furnished.
It further appears b/the testimony of the agent of the administratrix, that he repeatedly wrote to the agents of the company, asserting claim for loss under the policy, and could get no satisfactory response, until finally, on the 18th of May 1871, he received a. letter from one of the agents, stating that the claim had been maturely considered by the company, and that they did not regard themselves as liable, either-legally or equitably.
Ivey was examined as a witness in behalf of the-company, and there was considerable conflict between his testimony and that of Gordon (the agent of the administratrix), who was also examined as a witness,, especially in regard to the vacating of the building, Ivey’s knowledge of that fact at the- time he received the premium and delivered the policy, and also in regard to the proofs of loss and the furnishing of the blank forms for such proofs. There was other evidence in the case, but so much only is stated, and its tendency towards the proof of material facts as is-deemed necessary for the proper consideration and. determination of the questions of law arising upon the instructions.
The instructions and the rulings of the court *98 thereon are shown by the bills of exceptions, No. 1 ° and No. 2, before referred to, and are as follows:
No. 1.
Memorandum : That on the trial of this ea,use, after all the evidence on either side had been adduced and examined, the defendants by counsel moved the court to exclude from the jury, and instruct them not to consider any evidence going to show a loss by fire, consuming the two-story framed and shingled building, with brick basement fully detached, occupied in his lifetime “ by Alexander Kinnier as a family residence, situate on Daniel’s Hill near the city of Lynch-burg, Virginia,” the same having descended to the heirs at law of Alexander Kinnier, at his death and before the happening of said fire; which motion the court overruled, and refused to exclude said evidence, or instruct the jury not to consider it.
No. 2.
The defendant moved to instruct the jury as follows:
1st. That if the jury believe from the evidence, that after said policy was issued, any change within the control of the parties interested, or those representing them, material to the risk, occurred to the property to be insured against in the policy, then the policy became void, and no recovery can now be had thereon.
Which instruction the court gave with this modification :
That the change must have been such a one as affected the condition of the property itself, and that made by the act, authority, consent, procurement or *99 -connivance of the assured, and not the mere vacation 7 of the house by the assured or its occupants.
2d. That if the jury believe from the evidence, after the risk of the policy sued on was assumed by the defendants, the premises thereby insured became vacant by the removal of the owner or occupant for a period of more than twenty days, without notice to the company and their consent thereto in writing, the said policy was thereby avoided, and no recovery can be had thereon in this suit.
Which instruction the court gave, but with this •modification:
That if the insurers or their lawful agent knew of --said vacation, and did not then avoid it, but treated it -as a still existing policy, by delivering the same, and receiving the premium for the whole unexpired term, it was a waiver of the right to avoid it for that cause, ■and is no bar to a recovery in this action.
■3d. That if the jury believe from the evidence, that after the risk was assumed by the defendants, the title to the property insured was transferred or changed without the permission of the defendants written on ■said policy, then said policy was thereby avoided, and no recovery tbereon can be had in this suit.
Which instruction the court gave, but with this modification:
That if the change be a mere succession of the widow and heirs of the assured, who resided in the house insured at the time of his death, this was not such a change or transfer of title as avoided the policy.
4th. That if the jury believe from the evidence that the plaintiff failed, for more than thirty days after the loss occurred, to render the defendants a particular account thereof, with an affidavit stating time, circumstances, and cause of fire, the whole value and owner *100 ship of the property assured, amount, the amount of loss or damage, &c., then she failed to comply with the-requirements of said policy, and cannot recover in this-action.
Which instruction the court gave, but with this: modification:
That if the jury believe from the evidence that the insurers, from any reliable source, knew that the-building insured had been destroyed by fire, and by any act or declaration of theirs, or their lawful agent,, prevented the assured from preparing the schedule-with the affidavit thereto, required by the policy, within thirty days next succeeding the burning of the house, whether verbally or in writing, it was a waiver of the performance within the thirty days of that condition, and the omission to do so is no bar to this-action, provided it was done within reasonable time-thereafter.
5th. That the plaintiff cannot recover in this suit unless she proves that at the time of the loss by fire the property consumed was vested in or belonged, legally or equitably, to her as administratrix of Alexander Sunnier, deceased.
Which instructions the court refused to give.
6th. That if the jury believe from the evidence, that there was, on the part of the insured, or those claiming under him, such a violation of the conditions and requirements of the policy in controversy, as to work a forfeiture thereof, they must find for the defendant, notwithstanding that they believe that T. H. Ivey, the-agent of the defendant at Lyehburg, did undertake and agree on behalf of the defendant, by an oral contract, to waive in favor of the insured, or those claiming under him, the obligation of such condition and requirements, or any forfeiture which at the time of *101 .•such undertaking or agreement may have occurred thereunder.
Which instructions the court refused to give.
7th. That if the jury believe from the evidence that after the death of the intestate, Alexander Kinnier—a suit having been regularly instituted by his creditors for the purpose of subjecting the premises insured to the payment of his debts, and the court in which said -cause was instituted having, on the 15th day. of June 1870, ordered said premises to be sold by its commissioner, and said commissioner having, on the 8th of -July 1870, made such sale—those facts effected such a change in the title to the property insured under the provisions of the policy sued on as rendered the same void, and the defendants cannot be held responsible for any loss which thereafter occurred.
Which instruction the court refused to give.
The plaintiff by her counsel then moved the court to instruct the jury as follows:
1st. That if they believe from the evidence, that at the time of issuing the policy in the declaration mentioned, the witness, T. H. Ivey, had been authorized by the defendant to receive and accept proposals for risks subject to their approval and ratification, to issue -and deliver policies and renew the same, and receive the premiums therefor, and had been supplied with blanks signed by the president, to be filled up and countersigned by him, this constituted him the general agent of the company; and the company is bound by all his acts as such within the scope of his authority, •so long as it existed, notwithstanding any private instructions which he may have received limiting that authority, of which the plaintiff had no notice.
Which the court gave.
2d. That the company is bound by all the acts and *102 declarations of its agent, which were within the gene- ° ° ral scope of his authority, and made while in the exocution of his agency, notwithstanding that in such acts-an<^ declarations he may have departed from his instructions received from the company, provided that r J 5 r the assured had no knowledge of such instructions.
Which the court gave.
3d. That the conditions of the policy, that the policy should be avoided by the removal of the owner or occupant for a period of more than twenty days, without immediate notice and written consent, was inserted-by the company itself for its own protection and benefit; and that it was competent for the company or-its agent to waive the said condition, either orally or-in writing, notwithstanding the expression used as to-its written consent.
Which instruction the court gave.
After the foregoing instructions, as asked for by both defendant and plaintiff, and rejected, modified, or given as above stated, the defendant by counsel moved the court to give the jury, as a modification of the defendants’ second instruction, as modified by the court, the following instruction:
But if the jury believe, from the evidence, that the-defendants’ agent delivered said policy on the statement of the plaintiff’s agent, that the insured premises were in the occupation of a colored man, but that in fact the house insured was not then or afterwards thus occupied, but was then and remained vacant, then such delivery of the policy and collection of the premium was no waiver of the said condition in said policy, and the words “premises hereby insured,”' used in said policy, refer to the building thereby insured, and the occupancy of a colored man of an out *103 house fully detached was no such occupation of the “ premises insured” as said policy required.
The court refused to give said instruction, on the ground that at the time of the delivery of said policy and the receipt of the premium by the agent of the company, there is not a particle of proof before the jury that any statement of such kind was made by the plaintiff’s agent; and in lieu of said instruction the court gave the following:
That if the jury believe from the evidence, that after the risk of the policy sued on was assumed by the defendants, the premises thereby insured became vacant by the removal of the owner or occupant for a period of more than twenty days without notice to the company, and their consent thereto in writing, then said policy was thereby avoided, and no recovery can be had thereon in this suit, unless they believe from the evidence that the defendants or their lawful agent knew of said vacation and did not avoid it, but treated it as a still existing policy, by receiving the premium for the whole term, and delivering the policy, which would be a waiver of the right to avoid the policy, and is no bar to a recovery in this action.
The court further instructed the jury that the words in the policy, “ the premises hereby insured,” are to be interpreted as having reference exclusively to the dwelling house insured; and although the jury should believe from the evidence that an outhouse was occupied by a colored man at the time mentioned, it was not such an occupation of the house insured as contemplated in the policy.
To all which opinions and judgments of the court, refusing to give said first, second, third and fourth instructions asked by the defendant, except with the modifications thereof by the court, the said modifica *104 tions as made, and the refusal to give the fifth, sixth, 0.77 seventh and eighth instructions moved by the defendant’s counsel, and giving the instructions in lieu of tke eighth, and also giving the first, second, and third instructions moved by plaintiff’s counsel, the defendant by counsel except and pray their exceptions to be signed, sealed and enrolled according to law; which is accordingly done.
The instructions set out in bill “ Fo. 1,” and the fifth in the series of “ Fo. 2” may be considered together. They propound as law to the jury, that the title to the property insured being vested in the heirs of the plaintiff’s intestate, the plaintiff as administratrix could not recover on the policy. This is substantially the same proposition presented by the demurrer to the declaration, and as we have seen that the demurrer was properly overruled, for the same reason these two instructions were properly refused.
The other instructions asked for by the defendant relate to the conditions in the policy hereinbefore recited. IJpon examination it will be seen that these conditions and stipulations are wholly for the benefit of the insurer, stringent in their character, some of them more or less ambiguous and equivocal in their terms, and the breach of each is visited with a forfeiture. They are annexed, however, to the policy, constitute a part of the contract, and, however rigorous, are binding on the parties, unless in some way dispensed with. They should be fairly construed according to the rules applicable to such instruments.
The maxim, that “the words of an instrument shall be taken most strongly against the party employing them,” is peculiarly appropriate in the construction of a policy of insurance, and especially of such conditions as we are now considering. The instrument is *105 whollv the work of the underwriter, and is usually J 3 0 filled with a multitude and variety of stipulations seldom read by the assured when he accepts the and if read, rarely if ever fully understood. Abounding in forfeitures and in provisions, generally harsh and difficult of performance, it should be strictly construed against the insurer, and liberally in favor of the insured. A modern writer on insurance thus states ■the rule : “Ho rule, in the interpretation of a policy, is more fully established, or more imperative and controlling than, that which declares that, in all cases, it must be liberally construed in favor of the insured, so •as not to defeat without a plain necessity his claim to indemnity, which, in making the insurance, it was his ■object to secure.” May on Insurance 182.
Bearing in mind these salutary rules, let us proceed with the examination of the instructions embodied in the second bill of exceptions.
The first in the series evidently points to the condition or stipulation before noted as five. “Any ■change, within control of the assured, material to the risk, shall avoid this policy.” The court refused to .give this instruction as asked, and gave it with a construction of the word “ change,” limiting the meaning ■to a change which affected the condition of the property wrought by the agency of the assured, and excluding the idea that it embraced the mere vacation of the building by the assured or the occupants. I think this explanation was proper to prevent the jury from being misled. The word “change,” is certainly a very comprehensive term. In the sentence in which it occurs, considered without reference to other clauses, it might include any change in the title, possession, or condition of the property. But we must look to the whole instrument, and so construe it as to *106 give effect if possible to each and every part of it,, and ascertain what limitation, if any, should be placed, upon the meaning of this very comprehensive term “change.”
Was it used in reference to the title? Plainly not,, for a change of title is clearly and distinctly provided against by conditions two and three. Did it refer to a change of possession from the assured to some other person? I think not, for condition four implies authorized occupancy other than by the owner. Did it refer to the vacating of the premises ? It could not be, for that change is expressly provided against by condition four. It must therefore, as it seems to me, be taken to refer solely to some such change in the condition of the building as is declared in the modification made by the court. At all events, it could .not. have been intended to include the vacating of the building; and it is apparent that the sole object of the modification was to guard the jury against a construction which would include the vacating of the building; and although the construction given by the court may possibly be somewhat too narrow, yet, under the evidence, it could not have misled the jury, and was not to the prejudice of the defendant.
I do not think there was any error in refusing the instruction as asked, and giving it as modified.
The second instruction is based on condition four, which vitiates the policy, if the insured building; should be vacated by the removal of the owner or-occupant for more than twenty days without immediate notice and written consent. The instruction was-given with modifications. As given, in substance it declares as law that it was competent for the insurer or his lawful agént to waive condition four; and if at the time the agent of the company received the pre *107 mium of insurance and delivered the policy, he had x ° 7 knowledge of the vacation of the property, and did not then avoid the policy, but treated it as valid and subsisting, such conduct of the agent was a waiver of the condition, and a breach of it could not be relied on by the defendant to defeat the plaintiff’s recovery,
As before stated, there was abundant evidence before the jury tending to show that Ivey (the company’s agent) at the time he collected the premium and delivered the policy, had the knowledge on which the modified instruction was founded, and then represented to the plaintiff’s agent (Gordon) that the policy was all right, and that the money assured would be paid if the house should be burned; and furthermore threatened to cancel the policy if the premium was not paid. Gordon must have relied upon these acts and declarations of Ivey, and was induced thereby to pay, and did pay the premium and accept the policy.
There was evidence to show that both agents knew that the house had been left vacant, and would not be again occupied by Kinnier’s widow or by any of his family, for the family had dispersed, and all the circumstances go to show that it was not intended that the condition against removal should be enforced. If such had not been the intention and understanding of the parties, it is safe to conclude that the premium would not have been paid, nor the policy delivered.
How this conduct of the company’s agent, which the evidence strongly tended to prove—his acts and declaration—amounted if proved, (and whether proved was a question left to the jury), to a dispensing with the performance of the condition by the assured, or a waiver of the forfeiture incurred by the breach of it, or they operated as an estoppel, precluding the company from afterwards. *108 retying upon the breach as a bar to the claim of the assured for indemnity under the policy. Such waiver or estoppel, (for the terms “waiver” and “estoppel” may be indifferently used in application to subject we are now considering), may take place either pending the negotiation for the policy, or after such negotiation has been completed, and during the currency of the policy, and either before or after forfeiture incurred. Such waiver may be made by a general agent, acting within the scope of his powers, needs no consideration to support it, and may be by parol, although the written consent of the insurer is required by the terms of the policy. Hor will the party insured be bound, nor ought he to be bound, by any instructions given by the insurer to his agent limiting the general powers possessed by the latter in relation to the subject of the agency, unless such instructions are made known to the assured. May on Insurance 611, 618, 622; Coursin v. The Penn. Ins. Co., 46 Penn. St. R. 323; Peoria Marine and Fire Insurance Co. v. Hall, 12 Mich. R. 203; Heaton v. Manhattan Fire Insurance Co., 7 Rhode Isl. R. 502; Viele v. Germania Insurance Co., 26 Iowa R. 9.
The case last cited (26 Iowa 9) seems to meet every objection as to matters, of waiver and estoppel made ■by the plaintiff in error. It seems to have been elaborately argued by the counsel on both sides, and to have been thoroughly investigated and well considered by the supreme court of Iowa, in which the Hon. John P. Dillon, an eminent jurist, presided as chief justice. The reporter, in a note appended, •calls attention to the importance and somewhat leading character of the case, and the interesting nature of the questions discussed.
The following propositions, amongst others, sup *109 ported by numerous authorities, some of them English, but mostly American, seem to be established by that case.
1. Waiver oe Conditions—Estoppel.—A condition in a policy of fire insurance, that if the risk be increased by a change of occupation or other means within the control of the assured, without the written consent of the insurers, “the policy shall be void,” being inserted for the benefit of the insurers, they may dispense with a compliance therewith, or waive a forfeiture of the policy incurred by a breach thereof, and thereby become estopped from setting up such condition as a breach in an action for a loss subsequently occurring.
2. Waiver need not be in Writing.—And such waiver of the forfeiture arising from the breach of the condition need not be in writing, but may be by parol, at least in a case where the policy is not attested by the corporate seal of the company, and is hence not a specialty.
3. What will amount to a Waiver.—Any acts, declarations, or course of dealing by the insurers, with knowledge of the facts constituting a breach of a condition in the policy, recognizing and treating the policy as still in force, and leading the assured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach, and estop the company from setting up the same as a defence when sued for a subsequent loss.
4. Need not be rounded on new Consideration.— A waiver of conditions, or forfeiture arising from a *110 breach thereof, need not be founded on any new eon-7 J sideration.
5. Power op Agent to waive Eorpeiture.—A ^oca^ agent °f a foreign insurance company, clothed with authority to effect contracts of insurance, to fix rates of premium, to give consent to the increase of risks and change of occupation of buildings insured, to cancel policies on account of increase of risk, and exercise supervision over the property covered by policies issued at his agency, has power to dispense with conditions and waive forfeitures arising from a •breach thereof in the absence of any limitation upon his authority known to the assured.
6. Implied and Incidental Powers.—The foregoing powers are necessary incidents of the general authority of the agent to effect contracts of insurance, conduct the business at his agency, and do all things necessary and proper in the prosecution thereof.
7. Extent op ^Waiver.—A waiver of a forfeiture, resulting from a breach occasioned by a change in the occupancy of the building, increasing the risk, extends not only to breaches occasioned by the occupancy before such waiver, but to those resulting from a continuation of such occupancy.
I see no error in the refusal to give the instruction as asked, and giving it in the modified form.
The third instruction relates to condition two. The court gave it with a construction that the change interdicted by the condition was not intended to include ■devolution of title upon the heirs by the death of the assured. In this surely there was no error. By the *111 ohange of title provided against in the condition must ° r ° # have been intended a voluntary disposition or alien•ation of the property. It could not have been intended to embrace all kinds of transfer of title, for, in ■condition three, change of title by “ foreclosure of ’ ° J _ mortgage, or levy of execution,” is specially provided •against. Tt is there declared that such a change shall be “deemed an alienation;” that is by fair construction, an alienation within the operation of condition two. Condition three must therefore be taken to be intended as supplemental to condition two. Moreover, it is to the last degree uni’easonable to suppose, that ■any sane man would ever accept a policy of insurance against loss by fire, if he understood it, which contained a provision for immediate forfeiture by reason of his death and consequent descent of title to his heirs. Burbank adm’or v. Rockingham Mut. Fire Ins. Co., 4 Fost. (N. H.) 550.
The fourth instruction refers to condition six, in regard to the preliminary proofs of loss to be furnished to the company. The evidence showed that such proofs were furnished, although not within the thirty days from the time of loss. Gordon, the agent of the ■administratrix, after repeated applications, finally succeeded in getting the requisite blank forms for the proofs, which he filled up and delivered to Ivey, and the latter says he sent them to the company. Ho complaint was ever made by the company as to the regularity or sufficiency of the proofs, or as to the time within which they were furnished. Moreover, there was evidence tending to show that Gordon was prevented from sending the proofs within the thirty days, or at least that the furnishing them within the time was dispensed with by the company through their agent. The doctrine of waiver and estoppel, already *112 discussed, applies to this instruction also. Home Insurance Co. v. Cohen, 20 Gratt. 312; West Rockingham Mut. Fire Ins. Co. v. Sheets & Co., 26 Gratt. 854. The court committed
The no error in refusing the in- 3truction asked for, and in giving it as modified. The fifth instruction
The fifth instrhas been disposed of. The sixth and
The sixtseventh were refused, and, as I think, properly. The object of
The object ofthe sixth seems to have been to de- clare as law, that a forfeiture incurred by a breach of any of the conditions of the policy could not be waived, except in writing, if at all, and that a parol waiver by the agent would be nugatory. This propo- sition has been already determined adversely to the plaintiff in error in disposing of the questions arising upon the other instructions, and need not be further noticed, except to add that the instruction would seem to be faulty for another reason, that 'it proposed to- submit a question of law to the jury for their deter- mination; to wit: whether there had been such a viola- tion of the conditions of the policy as to work a for- feiture. Whether the facts and circumstances which constitute a forfeiture are proved, is a question- for the' jury; whether when proved they constitute a forfeit- ure, is matter of law for the court. The seventh instruction
The seventg instuctionasked for was based, as is supposed, on the third condition of the policy, im- posing a forfeiture by reason of “a foreclosure of a mortgage.” It is sufficient to say that there was no foreclosure of a mortgage in this case, and if a judicial sale under a creditor’s bill could by liberal construc- tion be brought within the operation of the condition, still such sale must have been so far perfected as to make it equivalent to the foreclosure of a mortgage. There was no such completed sale in this case. The this case. The *113 land with the insured building upon it was, as shown by the record, ordered to be sold before the building was burned, but the sale was never completed. It was made and reported to the court, excepted to, and never confirmed. On the contrary, it was afterwards set aside and wholly vacated. The purchaser was never let into possession, and was never at any time entitled to such possession. By the express terms of the decree ordering the sale, the commissioner, who was appointed to make it, was directed to announce publicly, at the time of sale, "that no sale under the decree ~hou1d `be valid until ratified by the court." This direction would seem to have been unnecessary, but the~ commissioner followed it, as shown by his report. 2 Dan. Oh. Prac. 1274, 1281.
The instruction, called the eighth, in the bill of exceptions, was asked for as an addition to modified instruction Ho. 2. It may be doubtful whether this instruction might not have been properly given, but at all events the refusal to give it did not and could not prejudice the defendant, because it was substantially covered by the instruction which was substituted for it.
The propriety of the instructions given on the motion of the plaintiff’s counsel has been settled in considering and determining the questions arising upon the defendant’s instructions, and need not be further noticed. See Story on Agency, §§ 77, 106, 126,134.
It only remains to consider the third bill of exceptions taken by the plaintiff in error to the judgment of the court overruling the motion for a new trial, made upon the ground that the verdict of the jury was contrary to the law and the evidence. The bill sets out the facts certified as proved on the trial, and those facts seem sufficient to warrant the verdict. As before stated, there was considerable conflict in the *114 testimony of the two main witnesses touching material facts. It was the peculiar province of the jury to deduce the facts involved in this conflict. They did so, and the judge who presided at the trial concurred with them in their finding. The law was applied by the jury to the facts under the direction of the court, in which direction, as has already been shown, there was no error.
The rules which govern applications for new trials, based upon the ground that the verdict of the jury is against law and the evidence, are well settled by numerous decisions of this court.. They are well stated by Judge Christian in a late case. Blosser v. Harshberger, 21 Gratt. 214.
Upon the whole, I am of opinion that there is no error in the judgment of the corporation court for the city of Lynchburg, and that the same should be affirmed with damages.
Christian, Anderson and Staples; Js., concurred in the opinion of Burks, J.
Moncure, P., dissented.
Judgment aeeirmed.