95  231
95  251
95  756
95  772
95  231
102  433
e102  434
95  231
104  370

# Staunton.

## MUTUAL FIRE INSURANCE CO. OF LOUDOUN CO. V. WARD.

SEPTEMBER 27, 1897.

1. INSURANCE—*Knowledge of Agent.*—An insurance agent who is authorized to receive and accept proposals for risks, to fix premiums, to receive payment, and to issue a receipt which shall constitute the person to whom it is issued a member of the company, and act as insurance upon his property until such time as the application shall be laid before the executive committee or board of directors, and be acted upon by them, is such an agent of the company that his knowledge, within the scope of his business as such agent, is the knowledge of the company.

2. INSURANCE—*Presumption as to Powers of Agent—Uncommunicated Limitations.*—In the absence of evidence to the contrary, the assured has the right to presume that the powers of the agent of an insurance company who solicits his insurance, fills out the application, receives the premiums and issues a receipt therefor, which is to act as temporary insurance until his application is passed upon by the company, are co-extensive with the business entrusted to his care. This presumption cannot be overcome by proof of limitations on the powers of the agent not communicated to the assured.

3. INSURANCE—*What Knowledge of Agent Binds Company.*—Facts relating to the risk, communicated to such an agent of an insurance company as is described in the case at bar before or at the time of issuing the policy in suit, bind the company, whether communicated to it by such agent or not.

4. INSURANCE—*Clause Against "Other Insurance"—Effect of Agent's Knowledge of "Other Insurance"—Estoppel.*—Notwithstanding the provision in an insurance policy which avoids the policy if there be "other insurance" on the property, unless it be made known to the company and endorsed on the policy or otherwise acknowledged in writing, if the existence of such "other insurance" was communicated to such an agent of the company as is described in the case at bar, the company is estopped to enforce the forfeiture, although

the agent may have neglected to communicate his knowledge to the company, and the company was in ignorance of the fact at the time the policy was issued, unless the limitation upon the agent's powers was in some way brought home to the assured.

5. INSURANCE—*Two Houses in Same Policy*—"*Other Insurance*" *Taken on House Not Burned.*—Where a dwelling-house and tenant-house are insured in one policy, containing the usual clause against "other insurance," and the premium on each is distinct, the clause will be construed distributively, and though "other insurance" be effected on the tenant-house without the consent of the company as required by the policy, that fact cannot be set up as a defence to an action for the destruction of the dwelling-house.

6. PLEADING—*Declaration*—*Duplicity*—*Special Demurrer.*—Objection for duplicity in a declaration cannot be raised except by special demurrer which has been abolished by statute in this State.

7. INSURABLE INTEREST—*Landlord and Tenant.*—A landlord has an insurable interest in the furniture of his tenant on the leased premises, when there is rent due and unpaid by the tenant.

Error to a judgment of the Circuit Court of Frederick county rendered December 9, 1896, in an action on an insurance policy wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

*J. J. Williams* and *A. Moore, Jr.*, for the plaintiff in error.

*Barton & Boyd*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

George W. Ward brought suit in the Circuit Court of Frederick county against the Mutual Fire Insurance Company of Loudoun county to recover for the loss by fire of a dwelling house valued at $3,200, and household furniture, clothing, and provisions valued at $300, insured by the defendant. The company appeared and entered several pleas, and, at the trial, asked for a number of instructions, and the objections of the defen-

dant to the rulings of the Circuit Court upon these pleas and instructions are set out in bills of exceptions, and made the subject of assignments of error in its petition to this court. There was a verdict and judgment for the plaintiff, and the defendant applied for, and obtained, a writ of error from one of the judges of this court.

It is not proposed to deal with the several questions presented in this record in detail. They are controlled by a few principles of law which we will now proceed to discuss, but first it will be necessary to state the facts proved before the jury.

It appears that in 1874 Ward took out a policy of insurance in the defendant company, and that the premiums were paid on it on the first day of each January thereafter, through Bowen, the then agent, until 1879. In 1876 the property insured was sold by Ward to Walker, and in 1877 Walker insured this property in the Home Insurance Company of New York, through Bowen, who was also the agent of the plaintiff in error. In April, 1878, the policy of Walker in the Home Insurance Company was endorsed: "loss, if any, under this policy on dwelling payable to George W. Ward." (Signed) "Walter Bowen, Agent." This, it is conceded, was not double insurance, the policy being taken out in the name of Walker, who had an insurable interest therein, and being endorsed for the benefit of Ward, who had a lien upon it for the purchase money. When the policy expired in November, 1878, it was renewed to November, 1879, with the same endorsement as to payment to Ward. Premiums on both policies were paid by Walker. January 1, 1879, Bowen received an annual premium on the policy in the defendant company, and in May of that year he ceased to be the company's agent, though he continued, as a member of the firm of insurance agents, to be the agent of the Home Insurance Company. One Clevenger thereupon became the agent of the defendant company. Afterwards Hugh S. Lupton became the agent of the defendant company in Winchester, Frederick county; and in December, 1891, Ward applied to him

for insurance upon a tenant house. The policy, No. 2705, issued in 1874 was then in force, all premiums upon it having been paid. When application was made for insurance on the tenant house Ward, in answer to enquiries, told Lupton that there was no other insurance on the tenant house; that there had been $500 on the tenant house and other property in the Home Insurance in the same policy in which he had $2,000 insurance on his dwelling house, Hansbrough & Carter being the insurance agents, but that he had directed them to cancel the insurance on the tenant house. Lupton, the agent, took time to examine the property, and on the last of December, 1891, or first of January, 1892, Ward again met him in the city of Winchester. Lupton gave him the application which is set out in full in the record. A number of questions are asked in this application which the applicant for insurance is required to answer, and he is also required to sign the application. The application in this case was written out by the agent, and in reply to the question:

"What amount is there now insured on the property, in what office, and in whose name?" the answer is given: "No other insurance." This application was signed by the applicant, George W. Ward. The policy was in due course issued in accordance with this application, and upon its receipt Ward discovered that it embraced the dwelling house, furniture, and the tenant house, and other property. It will be remembered that he already had a policy upon the dwelling house and furniture, and that he had only applied for insurance upon the tenant house. Upon receipt of the policy he called Lupton's attention to this fact, but Lupton replied that the company had thought it best to embrace all of Ward's property insured by it in one policy. Ward, however, retained his original policy taken out in 1874 until the year it expired, for which the premiums upon it had been paid. He then continued from that time until the loss occurred to pay to Lupton, as agent of the defendant company, the annual premiums as they fell due on policy 18,660. Some time after the date of the policy sued on, Ward, when paying Lupton a

premium in his office, said to him: "The premium in your company (meaning the defendant company) is much less than the premium in the other company (meaning the Home Insurance Co.) in which I have a policy on my dwelling house. It thus appears that there was abundant evidence tending to prove that Hugh S. Lupton, the agent of the company through whom the policy was issued, had notice before and at the time of the issuing of the policy and receipt of the premiums that Ward had insurance to the amount of $2,000 upon the dwelling house and furniture in the Home Insurance Company of New York. After these transactions were had it appears that Ward took out an additional policy upon the tenant-house, stable, shed and contents, of which there is no evidence that the defendant company or its agents had notice.

It is believed that these are all the facts which need be considered.

On behalf of the defendant company it is contended that, the policy having been issued to Ward, upon a written application signed by him, in which it is stated that there was no other insurance upon his property, and the fact of such other insurance not having been made known to the company and endorsed on the policy, or otherwise acknowledged in writing, the policy of the company is void; that the contract evidenced by the policy is an entire contract, and that Ward, having subsequently reinsured a part of his property embraced in it in another company, without the knowledge of the defendant company or its agent, the entire policy was rendered void; that this is a condition in the policy of insurance, and is also a warranty by the insured by virtue of the statement made by him in his written application; and, in support of this contention the defendant company relies upon article 5 of the policy, which is in the following words:

"If any property insured by this company shall be already insured, or shall be hereafter insured by any other company or companies, or individuals or otherwise, such insurance or insur-

ances must be made known to this company and endorsed on the policy, or otherwise acknowledged in writing, or otherwise the policy of this company shall be void. And, in case of any other insurance on the property insured by this policy, it is expressly declared that, in case of loss or damage by fire, the insured shall not be entitled to recover from or claim from this company any greater proportion of the loss sustained than the amount insured by this company shall bear to the whole amount of the insurance on the property so damaged or destroyed."

Upon the part of the defendant in error it is insisted that the condition set out in the policy, and the warranty relied upon, were inserted for the benefit of the insurer, and that it was entirely competent for the company to waive the forfeiture denounced in the article just quoted, and that, having issued the policy and received the premiums with the knowledge that "other insurance" had been taken upon the property subsequently destroyed by fire, it will be held either to have waived the forfeiture, or will be estopped to assert it, and, with respect to the subsequent insurance upon the tenant house of which there was no notice, it is insisted by the defendant in error that the contract is severable and not entire, and that, the tenant house not having been destroyed, "other insurance" upon it does not defeat or vitiate the policy as to the property upon which the loss actually occurred.

If the defendant company had been informed, at the time the policy sued on was issued, of the existence of "other insurance" now relied upon to defeat it, if the facts known to its agent Lupton had been communicated to the defendant company, there would, without question, have been a waiver of the forfeiture embraced by article 5 of the policy, or, what is equivalent thereto, the company would have been estopped to assert the forfeiture, and the defence in either case now set up would have been ineffectual. See *Wing* v. *Harvey*, 5 DeG. M. & G. at page 266. Indeed, upon this point, the authorities are so numerous and united, both text writers and adjudged cases, that it may be stated as established law.

The principal question which we have here to decide is this: Is the knowledge of facts communicated to Lupton to be imputed to the defendant company? This involves an enquiry into the character of the agency exercised by Lupton.

That the knowledge of a general agent who has power to receive and accept proposals for risks subject to the approval and ratification of his principal, to issue and deliver policies, and renew and cancel the same, will bind the company, was decided by this court in the case of *Georgia Home Ins. Co. v. Kinnier,* 28 Gratt. 96.

The same proposition is asserted in *Lynchburg Fire Ins. Co. v. West,* 76 Va. 579, where it is said, Judge Staples delivering the opinion of the court: "Defendants insist that the agent in this case was one of limited and special powers, and that the company cannot be bound by any opinions or representations on his part, the effect of which is to annul the clearly defined provisions of the contract of insurance. The evidence in this record with respect to the powers of the agent shows that the principal office of the company was in the city of Lynchburg; that the agent who effected the insurance resided at Floyd Courthouse, whilst the plaintiff's property was located in the county of Frederick. The papers connected with the policy show that the agent was clothed with such powers as are usually exercised by the local agents of insurance companies, whose business it is to solicit insurance, fill up applications, propound interrogatories, obtain answers, make recommendations, furnish all needful information with respect to the nature and character of the risk, and agree upon the terms of the insurance, subject only to the ratification of the company."

Facts communicated to the agent exercising the powers thus enumerated, though uncommunicated to his principal, were held in that case to bind the company, there being no evidence to show that special limitations upon the powers of the agent were known to the insured, or were plainly to be inferred by him from the nature of the agent's employment.

In *Weed* v.. *Fire Insurance Co.*, 116 New York, at page 117, it is said: "Notwithstanding the provisions of the policy that anything less than a distinct specific agreement, clearly expressed and endorsed on the policy, should not be considered as a waiver of any printed or written condition, or restriction therein, the law is settled in this State, that such condition can be dispensed with by the company or its general agents by oral consent as well as by writing."

In the case of *Insurance Co.* v. *Wilkinson*, 13 Wall., 234, it is said: "It is not to be denied that the application, logically considered, is the work of the assured, and if left to himself or to such assistance as he might select, the person so selected would be his agent, and he alone would be responsible. On the other hand, 'it is well known, so well that the court would not be justified in shutting its eyes to it, that insurance companies organized under the laws of one State, and having in that State their principal business office, send these agents all over the land, with directions to solicit and procure applications for policies, furnishing them with printed arguments in favor of the value and necessity of life insurance, and of the special advantages of the corporation which the agent represents. They pay these agents large commissions on the premiums thus obtained, and the policies are delivered at their hands to the assured. The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy, rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who has persuaded him to effect insurance as the full and complete representative of the company, in all that is said or done in making the contract. Has he not a right to so regard him? It is quite true that reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy, the

argument being that, as to all other acts of the agent, he is the agent of the assured.  This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them to seek assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon.  But to apply such a doctrine, in its full force, to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance corporations receive the benefits, and the parties supposing themselves insured are the victims.  The tendency of the modern decisions in this country is steadily in the opposite direction.  The powers of the agent are, *prima facie,* co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals.  An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal."

It has been supposed in some quarters that the case of the *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, impaired the authority of the case just cited, but this impression proceeds upon a misapprehension of the latter case.  It cites with approval the doctrine enunciated in *Wilkinson's case,* but points out that knowledge of the limitation upon the authority of the agent was brought home to the insured because those limitations were stated in the application signed by him.  Judge Field, who delivered the opinion of the court, at page 529, says: "It was the duty of the insured to read the application he signed.  He knew that upon it the policy would be issued, if issued at all.  It would introduce great uncertainty in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents

of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application, he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements or by those of its agents, unless the same were reduced to writing and forwarded with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed."

In the opinion of Judge Staples in *Insurance Co.* v. *West, supra,* while strongly asserting that knowledge communicated to the agent is binding upon the company, he wisely adds: "This is manifestly so, unless it could be shown that special limitations upon the powers of the agent were known to the plaintiff, or plainly appeared from the nature of his employment."

*Wilkinson's case, supra,* contains the same qualifications, where it is said that the powers of the agent are co-extensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals, but that the insured may look to and rely upon the agent who has persuaded him to effect the insurance as the full and complete representative of the company, in all that is said or done in making the contract.

The cases cited from this court, and the two cases from the Supreme Court, are in perfect harmony.

Let us now consider the powers exercised by Lupton, the agent, who effected the insurance which is the subject of this controversy.

The first by-law of the defendant company authorizes the board of directors, or the president and executive committee, to appoint as many agents or surveyors as they shall deem necessary, and then provides that "any person wishing insurance shall make application to any one authorized to make surveys for the company, who shall as soon as practicable proceed to examine the same, and shall make a written description or survey thereof with a valuation for insurance not to exceed three-fourths of the cash value of the property, exclusive of land, and shall name such premium thereon as may be conformable to the Table of Rates that may be from time to time established by the board of directors, and on the party applying for insurance, signing the application and premium note authorizing the secretary to sign for him, her, or them, the charter, constitution, and by-laws of the company, and paying such dues as the board may from time to time determine on, the said surveyor is authorized to give said applicant a receipt, either dated at the time or at such time as the parties may agree on, (of the form hereinafter described), which shall constitute such person a member of the company, and act as an insurance on his property until such time as the application shall be laid before the executive committee, or the board of directors, when, if approved by them, it shall be the duty of the secretary to issue said agent a policy for the applicant, in conformity with the application, who shall deliver it to him; but if the executive committee or board of directors disapprove of such application, then and from the date of 12 o'clock of the day on which such rejection is made, the application and all the proceedings had thereon shall be null and void and of none effect, and the secretary shall transmit it to the agent making the survey, who shall return it, together with all moneys received from him, to the applicant, and take back the receipt given him."

It requires nice discrimination to distinguish the powers here conferred upon the agent of the defendant company from those with which the agents in the *Georgia Home Ins. Co.* v. *Kinnier*, and *Insurance Co.* v. *West, supra*, were clothed, and which were held sufficient to bind the company by knowledge of the facts communicated to such agents.

In *Kinnier's case* the agent was clothed with power to receive and accept proposals for risks, subject to the approval and ratification of his principal, and to issue and deliver policies. In the case before us, the agent is authorized to receive and accept proposals for risks, to fix premiums, to receive payment, and to issue a receipt, which shall constitute such person a member of the company and act as insurance upon his property until such time as the application shall be laid before the executive committee or board of directors and be acted upon by them. The agent with whom Ward dealt received and accepted his proposal with knowledge of the existence of "other insurance." He filled up the application for insurance which was signed by the insured; the premium was paid; the papers were forwarded to the company; and in due course a policy was issued. There is no pretense that Ward was informed at the time of his application that there was any limitation upon the authority of Lupton as agent, and he had the right to presume that it was co-extensive with the business in which he was engaged. There was nothing in the written application which he signed which imposed any limitation, nor did such limitations plainly appear from the nature of his employment. It would seem to be within the scope of the powers of an agent authorized to solicit applicacations, to receive premiums, to issue a receipt which would constitute the applicant a member of the society and protect his property from loss until acted upon and rejected by the company, that, as incident to these duties, he should have authority to fill up applications, to propound interrogatories, obtain answers, make recommendations, and furnish all needful information with respect to the nature and character of the risk. It is

true, that the policy in this case provides that the existence of "other insurance" must be made known to the company, and endorsed on the policy or otherwise acknowledged in writing, or else the policy shall be void; and if that provision of the policy had been brought to the attention of the insured at the time he entered into the contract, his duty would have been plain, but this did not appear until the contract was entered into, the premiums paid and the policy issued, and Ward, knowing that he had truthfully represented to the agent of the company the existence of "other insurance" upon his property, had a right to assume that the agent had done his duty by communicating all necessary information to his principal; or that, whether communicated or not, the knowledge of the agent would be imputed to the company.

The authorities already cited seem sufficiently to establish the proposition that an insurance company will be estopped to enforce a forfeiture, where, at the time the policy was issued, knowledge of the facts relied upon to establish the forfeiture were in the breast either of the company itself, or of its agent clothed with like powers to those exercised by Lupton in this case. There are courts, however, of great respectability and whose decisions might with propriety be relied upon, which have gone much further in this direction than those already cited.

In the case of *Ætna Insurance Co.* v. *Olmstead,* 21 Mich. at p. 253, Justice Cooley says: "It is true that in this case the paper in question was drawn by an agent; but we do not think that, in a legal point of view, the rights of the parties are any different from what they would be had the agent himself been insurer. The insurance business of the world is done through agents almost exclusively, and the maxim *qui facit per alium facit per se* applies with special force to their acts. These agents assume to have, and generally do have much more intimate knowledge of the business than those with whom they deal. They may also be fairly presumed to understand the require-

ments of their principals, and how properly and legally to fill up the blank applications and other papers with which their principals entrust them. The community in general does not assume to be familiar with these matters, and would not venture "to set up their own view of what was or was not the proper form of an application, against the positive assertion of an expert. The forms and requirements of different insurers are different; and when an agent, who at the time and place is the sole representative of the principal, assumes to know what information the principal requires, and, after being furnished with all the facts, drafts a paper which he declares satisfactory, induces the other party to sign it, receives and retains the premium moneys, and then delivers a contract which the other party is led to believe, and has a right to believe, gives him the indemnity for which he paid his money, we do not think the insurer can be heard in repudiation of the indemnity, on the ground of his agent's unskilfulness, carelessness, or fraud. If this can be done it is easy to see that the community is at the mercy of these insurance agents, who will have little difficulty in a large proportion of the cases, in giving a worthless policy for the money they receive."

It was held in that case, that the agent, having knowledge of all the facts which in accordance with its terms made the policy void at its delivery, the insurers were chargeable with all the knowledge possessed by him.

In the case of *Boetcher* v. *Hawkeye Ins. Co.*, 47 Iowa, at p. 257, it was held that notice to a soliciting agent, who is authorized to fill up applications for the assured, to receive premiums and forward the same with the application to the company, and whose agency thereupon ceases, is notice to the company, although the policy of insurance expressly stipulated that the soliciting agent who took the application was the agent of the assured, it appearing that the assured was not advised of this stipulation in the policy at the time of the negotiation when the application was signed and the premium paid.

In the case of the *Mutual Benefit Life Ins. Co.* v. *Robison*, 7 C. C. A., 444, Judge Caldwell, delivering the opinion, uses the following language: "The application contains no limitation of the powers of the agents or the medical examiner. Their powers were co-extensive with the business entrusted to them respectively. The clause in the policy withholding from the agents authority to make, alter, discharge, or make any other contract in relation to the matter of this insurance is not a limitation of the powers of the agents in preparing and accepting the application for insurance. This provision of the policy does not take effect until the application is made and accepted, and the policy is issued."

Upon this point we are of opinion that the insured having at the time of his application for insurance communicated to the agent through whom the policy was obtained all the facts material to the risk, the company is estopped to enforce the forfeiture provided for by article 5 of the policy, although its agent may have neglected to communicate his knowledge to the company, and though the policy was issued in ignorance of the facts.

The second point of contention, to-wit: that the contract of insurance being entire is forfeited by the existence of "other insurance" on the tenant house, shed and contents, knowledge of which insurance was not communicated to the agent or the company, is equally untenable.

Without going into an extended discussion of the subject, we are content to rely upon the authority of *Quarrier* v. *Peabody Ins. Co.*, 10 W. Va. at p. 507. In that case the policy contained the provision that if the assured should make any other insurance on the property, or any part thereof, the policy should be void. Judge Green, delivering the opinion of the court, after a careful review of many authorities, from which he deduces the general rule, that where the consideration paid or to be paid is entire the contract should be held to be entire, says: "A policy of insurance is a contract so different from those in

which these general rules have been laid down, that it is doubtful whether they can be applied to this peculiar contract, or in what manner the application of them should be made. Instead, therefore, of resorting to these rules, which are just and reasonable in ordinary contracts in ascertaining whether a policy is to be interpreted as entire or separable, it seems to me that it is safer to apply the general principle before announced, that, in ascertaining the character of the policy in this respect, the courts should be guided by a respect to general convenience and equity, and by the good sense and reasonableness of either construction, bearing in mind that the law leans strongly against forfeiture, and it is incumbent on the party who seeks to enforce one, to show plainly his right to it." This seems to us eminently wise and just.

The policy in this case, it will be recalled, was originally issued upon the dwelling house and its contents. Subsequently the insured applied for insurance upon the tenant house, shed and contents. The company for its convenience embraced both risks in one policy. The premium for insurance upon the tenant house was $2.88, the fee for the survey and policy was $2.00. These items were added to the premiums due for insurance upon other property, including that which was destroyed, and a check was given for the aggregate amount, $15.33. The tenant house was not burned, and to hold that the fact of the existence of "other insurance" upon this tenant house not communicated to the insurer should render void the entire policy would be a great hardship and injustice.

It is claimed that it does not appear that the plaintiff had an insurable interest in the furniture. This objection is first presented by way of demurrer to the declaration, but in that form it would be untenable even though the insurable interest did not exist, for the declaration sets out a good and sufficient cause of action. Though it be conceded, for the sake of argument, that it did not disclose the interest of the plaintiff in the furniture, it would be proper to overrule the demurrer for reasons

fully stated in the opinion of this court delivered by Judge Riely in the case of *Norfolk & W. R. Co.* v. *Ampey,* 93 Va. 108, and more recently in the opinion of Judge Buchanan in the case of *Kimball & Fink, Receivers, &c.,* v. *Borden,* decided at this term.

The fact with reference to this furniture is that it was in the dwelling house occupied by Walker as the tenant of the plaintiff. The rent for this house was due and unpaid, and Ward was therefore the creditor of Walker, with the right, by virtue of the statute law of this State, to hold the goods upon the premises for the payment of the rent. This, we think, constitutes an insurable interest.

The propositions of law which we have discussed dispose of every question presented upon the record, and of all the objections taken to the rulings of the court upon the pleadings, upon the admissibility of evidence, and upon the instructions. The rulings of the court upon all these questions are entirely consistent and harmonious, and we think are sustained in every respect by the decisions of this and other courts.

There was a motion for a new trial, upon the ground that the verdict was contrary to the evidence. It sufficiently appears from what has already been said that the court committed no error in overruling this motion.

Upon the whole case we are of opinion that the judgment of the Circuit Court should be affirmed.

*Affirmed.*