HAMILTON *et al.*, *Appellants*, v. THE HOME INSURANCE COMPANY.

1. **Agency**: QUESTIONS FOR JURY: INSTRUCTION. Where, on the question, whether or not one was the agent of the defendant, there is evidence of facts tending to prove such agency, it is competent for the court to instruct the jury that if they find the existence of the facts, then such agency existed.

2. ——— : ——— : ———. The evidence in this case reviewed and held it was sufficient to authorize the instruction.

3. **Insurance**: KNOWLEDGE BY AGENT OF OTHER INSURANCE. Where the agent of an insurance company taking the insurance has notice of other insurance and makes no objection thereto, such other insurance is no defence to an action on the policy.

*Appeal from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

*Noble & Orrick* for appellants.

(1) The several instructions given for plaintiff were

| 94 | 353 |
| 35a | 267 |
| 35a | 271 |
| 35a | 436 |
| 94 | 353 |
| 38a | 114 |
| 94 | 353 |
| 47a | 113 |
| 47a | 115 |
| 94 | 353 |
| 48a | 7 |
| 48a | 73 |
| 94 | 353 |
| 49a | 263 |
| 94 | 353 |
| 58a | 212 |
| 94 | 353 |
| 62a | 297 |
| 62a | 497 |
| 94 | 353 |
| 63a | 92 |
| 94 | 353 |
| 132 | 590 |
| 66a | 205 |
| 67a | 71 |
| 67a | 78 |
| 94 | 353 |
| 75a | 339 |
| 94 | 353 |
| f77a | 637 |
| 79a | 367 |
| 94 | 353 |
| 86a | 390 |
| 94 | 353 |
| 169 | 26 |
| 94 | 353 |
| 97a ³ | 86 |

properly given.  The first instruction was to the effect
that if the jury found, from the evidence, certain facts
existed, they constituted Miller agent of the Home Insur-
ance Company (defendant).  (a) The question whether
certain facts would constitute one an agent is a question
of law and was rightly controlled by the court.   Thomp-
son Charging the Jury, sec. 10; *Tyson v. Rickard*, 3
Harr. & J. 109-116; *Davis v. Harris*, 7 Harr. & J. 36;
*Clark's Adm'r v. Marriott*, 9 Gill, 331-334.  (b) The
facts, if found, did constitute Miller agent.  The printed
instructions of June 11, 1880, by Bennett to Miller, were
enough to make him such.  (c) The whole instruction
was but a fair summary of the facts proven chiefly by
defendant's own witness.  (d) It was not competent for
the principal (defendant), by a provision in the policy,
to constitute its agent, as to an act already done, the
agent of the assured.  There is no "magic" in such
provision in a policy. *Ins.  Co. v. Ives*, 56 Ill. 402; *Ins.
Co. v. Cooper*, 50 Pa. St. 331 ; *Insurance Co. v. Wilkin-
son*, 13 Wall. 222 ; *Eames v. Ins.  Co.*, 94 U. S. 630.
(2) The second instruction for plaintiffs announces the
proposition that if Miller was acting as agent for the Home
Insurance Company (defendant) in the transaction of its
insurance business, and he had notice of the subsequent
insurance and made no objection, and took no steps to
cancel the plaintiffs' policy, then, the existence of such
subsequent insurance is no defence.  (a) Where the
same agent represents both companies, the original
company cannot set up the failure to indorse as a de-
fence.  *Russell & Co. v. Ins. Co.*, 55 Mo. 585 ; *Hay-
ward v. Ins. Co.*, 52 Mo. 181 ; *Howitz v. Ins. Co.*, 40
Mo. 557 ; *Ins. Co. v. Taylor*, 73 Pa. St. 342 ; *Thomp-
son v. Ins. Co.*, 52 Mo. 473.  (b) Notice given an agent
while his agency exists, and referring to business com-
ing within the scope of his authority, is notice to the
principal. *Hayward v. Ins. Co. supra ; Wilkinson v.
Ins. Co.*, 2 Dillon, 570.  (c) Upon such notice, in the

absence of any dissent, the company will be presumed to have waived the written indorsement, and will be bound. *Pelkington v. Ins. Co.*, 55 Mo. 172; *Ins. Co. v. Schilleler*, 38 Ill. 166; *Ins. Co. v. Lyons*, 33 Texas, 253. (*d*) Foreign insurance companies are bound by the acts of their local agents, acting within the scope of their general authority, without any immediate knowledge of the transaction on the part of the company. *Franklin v. Ins. Co.*, 42 Mo. 456; *Combs v. Hannibal*, 43 Mo. 148; *Geib v. Ins. Co.*, 1 Dillon, 449; *Viele v. Ins. Co.*, 26 Iowa, 10; *Rowley v. Ins. Co.*, 36 N. Y. 550; *Bartholomew v. Ins. Co.*, 25 Iowa, 507; *The Distilled Spirits*, 11 Wallace, 356.

SHERWOOD, J.—Action on a policy of insurance issued by the defendant company to the plaintiffs for the sum of twenty-five hundred dollars, on a stock of goods, in Deadwood, D. T. The policy took effect from the sixth of July, 1880. The petition avers that the defendant is an insurance company and corporation acting under and by virtue of the laws of the state of Ohio, having a general agent in the state of Missouri, resident at St. Louis, then declares on the policy; alleges a loss by fire on the eighteenth of January, 1881, proofs of loss furnished, February 23 next thereafter, and prays damages, etc.

The answer of the company avers: "That on the sixth of July, 1880, at Deadwood, plaintiffs, by their agent, L. C. Miller, applied to defendant for insurance, as in the petition mentioned, and defendant accepted the application and delivered the policy sued on, which is made a part of the answer, and says, by the express terms of the policy, it was agreed that if the assured should then have or thereafter make any other insurance on the property, without notice to and consent of the defendant, in writing, indorsed thereon, the policy should be null and void; and if any policy had been

procured by any person or persons, other than the duly appointed and authorized agent of the company, such person should be deemed to be the agent of the assured." The answer then avers that, "at the time last aforesaid, the plaintiffs, by their agent, Miller, gave defendant notice that the goods were insured against loss and damage by fire, by the Home Insurance Company; that the terms and amounts were as have been before stated, and that the defendant consented to the said last-mentioned insurance, and indorsed its consent on the policy." The answer then further alleged that, at the time the said policy of insurance was effected, plaintiffs had policies on the same stock of goods in other insurance companies, of which defendant was given no notice, and that, afterwards, on the twenty-eighth day of July, 1880, the plaintiffs, by their agent, Miller, and without notice to defendant, effected other policies of insurance in other companies, upon the same stock of goods, etc.

The reply of the plaintiffs suitably put in issue the material allegations of the answer, and the cause being tried resulted in a verdict for plaintiffs in the sum of $2,756.16. The present cause, consolidated with that of the same plaintiffs against the Aurora Fire Insurance Company, was tried before Hon. Amos M. Thayer, and resulted also in a verdict for the plaintiffs in the sum of $1,653.70. Both of these causes went on appeal to the St. Louis court of appeals, where the judgments of the circuit court were reversed, and from the judgment in the former case, the plaintiffs have appealed to this court.

Among the general provisions of the policy in question was this one: "It is further agreed that if this policy has been procured by any person or persons other than the duly appointed and authorized agent of this company, such person or persons shall be deemed the agent of the assured, and not of this company; this company shall not be liable by virtue of this policy or

any renewal thereof, unless the premium be actually paid to the company." Among the conditions upon which the policy should become void was this: "If the assured shall have or hereafter make any other insurance on the property herein insured, or any part thereof, without notice to, or consent of, this company, in writing hereon." A slip was attached to the policy, as forming a part of the same, dated July 6, 1880, was signed J. B. Bennett, *General Agent*, and the policy was authorized to be countersigned by the duly authorized agent, and was countersigned, J. B. Bennett, General Agent. Bennett was the general agent of defendant, and resided in St. Louis. He had authority to write, countersign, and issue policies, and appoint local agents.

Hamilton, one of the plaintiffs, testified in substance that: He was a resident of Deadwood, Dakota; a merchant. He testified to the policy of fifteen hundred dollars in the Aurora, which he says he obtained from L. C. Miller, insurance agent at Deadwood; that Miller solicited the plaintiffs for insurance; plaintiffs told him to place four thousand dollars in some good companies, and he, Miller, brought the plaintiffs the policies of twenty-five hundred dollars in the Home, and fifteen hundred in the Aurora; the subject-matter of insurance was their stock of merchandise in their store at Deadwood; they took other insurance subsequent to the policy sued on; procured the subsequent insurance of L. C. Miller, agent of the companies; it was at his solicitation, and not plaintiffs'; it was at different dates; one on the twenty-first of July, probably, for five hundred dollars; one in October, and one in December. "The one that went on in October was to take the place of the thousand that was already on in this defendant; it had been in the Liverpool, London and Globe, and we put it in the Springfield. There was insurance of a thousand dollars on the stock when we took the insurance in the

defendant company. When Mr. Miller brought the policies, we read them over and noticed that they did not mention the fact of our having the thousand dollars in the Liverpool, London and Globe, and we called his attention to it; he said it didn't make any difference, as long as he was the agent for both companies, or for all the companies, and the policies came through him. Mr. Miller, of whom we obtained the insurance of the defendant company, was the same Miller of whom we afterwards obtained the insurance in the Springfield Insurance Company, and the other companies that witness refers to. The goods insured were totally destroyed by fire on the eighteenth of January, 1881, the value placed on the stock was about eleven thousand dollars."

The Miller, who is referred to in the answer of the defendant, deposed in behalf of plaintiffs, as follows: "Residence, Deadwood; age, 48; occupation, insurance agent; had been agent for five years; got Hamilton & Rockfellow, the plaintiffs, their insurance from Mr. J. B. Bennett, at St. Louis, who was the general agent for numerous companies, this among the others. Solicited insurance from Hamilton & Rockfellow, and my order to Mr. Bennett was in one order for four thousand dollars, written on a blank, I think, without any name of particular company; if it was any, it was the Home; if it was on the printed blank that he furnished, it was the Home of Ohio; sent the order off, and instead of being one policy they sent two—one of the Home for twenty-five hundred dollars, and one in the Aurora, of Cincinnati, for fifteen hundred dollars. At the time of issuing this insurance to plaintiffs of the defendant company, and in taking the application, *I had notice of other insurance, and put on the blank to that effect; that there was other insurance in the Liverpool, and London and Globe—just how much, now, I couldn't say, but the application will show.* I had taken the policy of the Liverpool, and London and Globe, and it

was in force at the time ; subsequently, issued policies in other companies upon the stock of goods ; renewed the Liverpool, and London and Globe Insurance Company's policy in the Springfield, if I recollect right, and they had a small policy, in addition, in the Watertown Company of New York, if I recollect right ; fifteen hundred dollars in still another. At the time of issuing these policies, I considered myself the agent of the Home of Ohio, and with authority from Mr. Bennett to write any insurance, take any application I thought best for any amount, *and he would furnish the policies in some first-class company ; that was my arrangement with him.* Under this arrangement obtained the Aurora policy, which Mr. Bennett forwarded to me. There was a good deal of insurance I obtained in Dakota, in this district, for that company, the Aurora ; all the insurance of which I have spoken, taken subsequently by Hamilton & Rockfellow, in the Watertown Mechanics' and Traders', and Springfield, was taken through me as agent ; I either wrote it or got it for them ; was acting as agent for the insurance companies in that capacity ; always took my commissions, or compensation for my services, out of the premium, before returning the premium ; that is the rule and custom for all insurance agents, to take out commission, and send the balance to the company. The particular policy was paid for by the plaintiffs, and the money was forwarded to J. B. Bennett at St. Louis. *Mr. Bennett was acting as general agent for several companies,* and this among the balance, as general agent ; don't know how large a section of the country ; don't know that he had any limit to his district."

Further on, the deposition of this witness discloses that he had authority from Bennett to make out applications *generally* upon printed blanks furnished him by Bennett, and that these applications would be directed to the Home ; that witness would write more than the

Home would take, and Bennett would distribute the residue among such first-class companies as he might select, and issue policies accordingly. And Bennett authorized witness to bind the companies from the date of application, while the applications and policies were in transit. This witness also disclosed that through him some thirty-five or forty policies in the Home Insurance Company were obtained by him through Bennett; that witness was acting as the agent of that company under authority from Bennett, who furnished him with daily reports, printed envelopes, *but no policies;* that witness sent to Bennett his daily reports, and he divided these reports very frequently, and most always, issuing some in particular companies where the orders were large; and that it was one of these blank daily reports that witness used concerning the policy in controversy, and sent it on to Bennett.

This witness also produced some letters and circulars sent to him by Bennett; they are as follows:

"J. B. Bennett, General Agent,
" No. 14 Insurance Building,
" Sixth and Locust streets,
"St. Louis, Missouri, June 11, 1880.

"Mr. L. C. Miller, Esq., Deadwood, D. T. :

"Dear Sir: We are in receipt of your application for the agency of the Home, of Ohio. Our supplies are being prepared, and as soon as finished, we will be ready to appoint our agents. Until then we will issue policies here, allowing you the usual commission of fifteen per cent. We have facilities for placing lines in first-class companies, and are prepared to accommodate you to any extent, and will be pleased at all times to hear from you.

"Yours truly, .
"J. B. BENNETT, G. Agent."

A printed circular, on which was printed with a

stamp the name of the Home Insurance Company, Ohio, J. B. Bennett, General Agent, on each side of the words "La Caisse Generale," which had been erased, and the circular was dated June 11, 1880, addressed to L. C. Miller, Esq., *Agent Home Insurance Company, at Dead-wood, D. T.* It stated upon what principles the company did business in the following words:

"Dear Sir: We transact business upon sound and enduring principles, pay fair losses promptly and pleasantly, appreciate and second the efforts of our agents heartily, and ask proper concert on their part, so as to promote the best interest of all concerned *in the agency now entrusted to your care;* therefore, compliance with the following instructions and rules is confidently expected." Then follows requirements as to monthly reports, risks, rates, etc., and it is signed,

"Respectfully,

"J. B. BENNETT,

"General Agent."

"J. B. Bennett, *General Agent,*

"No. 11, N. W. Corner of Sixth and Locust Sts.

"St. Louis, Missouri, June, 11, 1880.

"L. C. Miller, Esq., Dakota Territory:

"Should you need any surplus lines of insurance placed, or have any desirable business you want insured in solid companies, at fair rates, please send me application with the written form of policy, and I will promptly send you policies for same, allowing you customary commissions. An extensive experience of over thirty years enables me to so appreciate the growing requirements of this business to agents and others concerned, as to frequently render just the assistance needed in promoting desirable insurance transactions in a satisfactory manner. If you avail yourself freely of this offer, you can make it a valuable auxiliary to your agency by securing better lines and controlling more custom with less competition,

labor, and responsibility to yourself. Soliciting your orders, I remain,

"Yours truly,

"J. B. BENNETT."

A letter from J. B. Bennett, October 2, 1880, to L. C. Miller, Deadwood, D. T., in which he says: "In reply to your favor of the 27th inst., I can fill your orders for the Watertown Insurance Company to your satisfaction. There is no occasion for different arrangements. *You can make the risk binding from your mailing orders, or from any subsequent date desired. I will allow you* the policy fees when you collect the same; also fifteen per cent. commission, and can also accept any outside business you recommend—in fact, do it better and more satisfactory every day than to have your D. T. reports *come under the criticism of some clerk at main office*, as much of the business of fire insurance is done east of the Missouri."

The witness also produced another letter, which is worthy of preservation; it is dated: "St. Louis, Missouri, October 26, 1880. L. C. Miller, Deadwood, D. T."

It proposes to give him (Miller) a few items that may benefit him. It commences with the proposition that: All desire to be law-abiding citizens, but that statutes are of different degrees of importance. Some are against passing bank notes of small size; yet the public take all the one-dollar bills offered them; that the state controls all the corporations—that is the legal theory—and a corporation cannot operate beyond its jurisdiction unless permitted to do so; but the necessity of trade modifies this; under the individual rights given to every citizen of the United States, *a citizen has the individual constitutional right to buy and sell with great freedom; he can buy his insurance just where he wants to, and he can do this by his agent or attorney.* So merchants in large cities are compelled to cross state lines for insurance risks for large amounts,

that are placed this way from all important cities, and by the most sensible and responsible agents, *and an insurance agent should understand how to do this without running against the legal stumps.* Many of the insurance statutes are mere forms and fees, embarrassing to legitimate business; the main thing to do is to get a good contract and a policy in a responsible company, for one hundred cents on the dollar for fair losses. The whole matter turns on whose agent the broker is; if he is the agent of the applicant, he can deal with whomsoever and wheresoever he desires. "To put this at rest, I have a simple form (see the last line of the blank enclosed); you will be careful not to make any record as agent for the insurance company, so as not to give any hold for any rivals or maliciously disposed persons to make trouble. As an agent of a foreign insurance company you can do nothing, except you go through several forms and pay the fees, but as a citizen of the United States, in your individual right, you can act for any party who desires you to obtain their insurance for them, untrammeled. You are the agent of such parties, and no state law can limit the citizen's rights in such matters. Yours truly,

"J. B. BENNETT, General Agent."

The witness also testified that before his appointment as agent, he received a circular letter from Bennett, marked "Exhibit F," which is as follows:—

"General Agency Department,
"Home Insurance Company, of Columbus, Ohio.

| | |
|---|---|
| "Incorporated 1864. | Losses paid $2,888,874.51. |
| "J. B. HALL, President. | H. M. HENDERSON, Sec. |
| "R. S. BROWN, V. P. | C. G. SHEPPARD, A. S. |
| "J. B. BENNETT, | F. C. SESSIONS, |
| "General Agent. | Treasurer. |

"The Home Insurance Company of Ohio, with sixteen years' experience, having paid $2,888,874.51, for

losses and $199,126.60 for dividends, with gross assets and security for policy-holders on first of January, 1880, of $511,262.44, deeming present time and circumstances favorable for prudently extending its agency business, is fully prepared to do so in the right way when proper parties and opportunities present themselves. Address J. B. Bennett, St. Louis, Mo., who will give special and prompt attention to such matters for the Home of Ohio. Herewith you have blank for agency application.

"Yours truly,<br>"J. B. Bennett."

To sustain the issues on its behalf, the defendant introduced evidence as follows:

A letter from L. C. Miller to Bennett, dated June 30, 1880, enclosing the application of Hamilton & Rockfellow, for insurance on the property as before stated, for four thousand dollars, at five per cent. premium, two hundred dollars, dated June 30, 1880. Signed, "H. & R., applicants, per Miller."

"Questions on the opposite side must be fully answered by applicant.

"L. C. Miller.

" Commercial Insurance Company, California.

" Applicants must answer the following questions, etc.: Question II: What other insurance in any company and in what company." There are twenty-seven of these questions, some answered and some not. There is no signature by applicants. At the foot it is signed, "L. C. Miller."

The deposition of J. B. Bennett, the general agent of defendant, was also read on behalf of the defendant, in which he states that he was the general agent of defendant at the time indicated; was not general agent of the Aurora Insurance Company, *speaking in technical insurance parlance;* not agent for the Merchants' and Traders', nor the Watertown, but writing policies for the Watertown to some extent, for Dakota Territory,

not as general agent, but rather as "*local agent at large ;*" received application from L. C. Miller, and wrote policy for Hamilton & Rockfellow ; application written on form of Commercial Insurance Company. He denies that he received any notice of other insurance from Miller, until after proofs of loss on their claims had been made ; denies that he ever appointed him as agent. Says that, "Mr. Miller was the same as any *other citizen* that might be engaged in the business of insurance ;" that Mr. Miller's powers were to pay premiums over for policies sent to him, or to return the policies within a reasonable time ; that "Mr. Miller *never had any agency as we understand the term in insurance.*" He says : "As a general agent I have full power with the Home Insurance Company to appoint agents and supply them with the documents, give them instructions, esti- mate losses, settle and pay the same, and was the full general agent and representative of said corporation." He states that he solicited from Miller an insurance cor- respondence ; that if he would send him proper applica- tions, he would place risks for him, allowing the usual brokerage ; that "this arrangement was more particu- larly with *La Caisse Generale Insurance Associa- tion of Paris*, and had nothing to do with the Aurora or Home insurance companies, or the several other insur- ance companies I represented," and he further says, in regard to the policy in question, that "*all connection with the matter closed when the policy was delivered by Miller.*"

It is shown, however, in Miller's deposition that he was present at the fire, telegraphed Bennett of the loss, also wrote him a full account of the fire, and gave par- ticulars of the loss, and in response to his letter, received one in a few days from Bennett, signed as general agent, acknowledging receipt of telegram and letter, and con- cludes by saying : "Please give us the facts in the case early. We note that H. & R. did not stand well finan-

·cially. What was the cause of the fire? Please give us a proper understanding about and of the nature of the accident, and the whole case, so far as you can do so," ·etc.

On cross-examination, Bennett denied that the blank attached to the deposition of Miller, purporting to be an application to Bennett, as general agent, at St. Louis, was ever received from Miller; also denied that he ever sent such a blank in the case, then admitted that he did send him such a blank. Bennett then admitted that all the exhibits, letters, and circulars Miller had offered in evidence were genuine; stated that he was the general agent of La Caisse Generale Insurance Company; that the form produced is that of the latter company and not of the Home, and that that name was merely .stamped on in the office of witness as an *advertisement*. He also admitted that "Exhibit F," already set forth, was a special circular of the Home Insurance Company.

The evidence in this cause has been set out at large, in the foregoing statement, which accompanies this opinion, because the sole ground upon which the judgment of the circuit court was reversed by the St. Louis court of appeals was, that there was *no* evidence to show that Miller was the agent of the Home Insurance Company. It seems to me that there is ample evidence of that fact, all through this record—extending from the inception ·of the agency down till the occurrence of the loss. And ·even when the loss occurred, Miller acts as an agent should, advises his principal of the loss by telegraph; writes him full particulars by mail, and receives the usual reply in such cases from Bennett. If, as the latter swears, "all connection with the matter closed when the policy was delivered by Miller," it seems strange beyond belief that a mere stranger should so interest himself in the loss as Miller did. The court of appeals seems to have overlooked the significant manner in which the printed circular of June 11, 1880, was addressed to L. C. Miller, Esq.,

" *Agent of Home Insurance Company at Deadwood, D. T. ;* " that it refers to the " *agency now entrusted to your care,*" and contains full and explicit instructions as to the method of procedure in taking risks, writing policies, making reports, etc., and that it is signed by Bennett as general agent ; and that this circular was received by Miller in response to his application for such an agency. Nor does the court of appeals seem to have considered many other cogent facts with which this record abounds, tending very strongly to show not only that an agency existed in, and had been conferred upon Miller, in pursuance of his request, but that he was in the constant exercise of that agency for months ; that it assumed indeed a frequentative form, and resulted in much profitable business being sent by Miller, in his capacity of agent, to his principal. With such a mass of relevant and direct testimony before them, it is difficult to see how the jury in this cause could have found otherwise than they did.

The trial court was, therefore, entirely correct in giving the following instruction :

"1. If the jurors believe that J. B. Bennett, the general agent of the Home Insurance Company, mailed to one L. C. Miller, at Deadwood, Dakota Territory, the printed circular marked " Exhibit F," attached to the deposition of said Miller, which has been read in evidence ; that thereafter said Miller applied for the agency of the Home Insurance Company to said Bennett, and thereupon said Bennett wrote and mailed to said Miller the letter of June 11, 1880, which has also been read in evidence, and at the same time enclosed the printed circular of instructions, dated June 11, 1880, addressed to L. C. Miller, agent Home Insurance Company, Deadwood, D. T., which has also been read in evidence. And if you also believe that said Miller thereupon, and for a period of several months thereafter, solicited insurance for, and on behalf of, the Home Insurance

Company at Deadwood, Dakota Territory, with the knowledge of said Bennett, and received applications for insurance and forwarded them to said Bennett, and secured policies from said Bennett written by the Home Insurance Company, and delivered the same to parties assured and collected premiums thereon, and was paid by said Bennett for his services a commission of fifteen per centum out of the premiums so collected, then as a matter of law, the court instructs you, that such facts (if you find them to exist) constituted the said Miller the agent of the Home Insurance Company for the transaction of its business at Deadwood, Dakota Territory, as long as such dealings continued."

That instruction is a very happy and concise embodiment of the evidence adduced on behalf of the plaintiffs. If evidence tending to prove certain facts to exist, be introduced, it is perfectly competent for the court to instruct the jury that if they find the existence of such facts, that then the law arising on the facts thus found is as stated in the instruction. Thompson Charging the Jury, sec. 10; *Davis v. Davis*, 7 Har. & J. 36; *Clarke's Adm'r v. Marriott's Adm'r*, 9 Gill, 331.

Taking the agency of Miller as established, it results that if he as such agent had notice of other insurance and took no steps to cancel the policy in suit; then the fact of such other insurance would constitute no defence to plaintiffs' action on that policy, and this upon the familiar principle that notice to the agent is notice to the principal; and what the agent waives, the principal cannot afterwards insist upon. And in cases of insurance, if an agent, when notified of further insurance, gives verbal assent, or makes no objection, his principal cannot afterwards, when sued on the policy, make the point that other or further insurance was not indorsed upon the policy. In such circumstances, failure of literal compliance with the stipulation in the policy will not be allowed to work a forfeiture, and the company is

held estopped from making such a claim. This is the decided tendency of modern adjudication. May on Ins., sec. 370. And this has been the rule laid down in this court on several occasions. *Hayward v. Ins. Co.*, 52 Mo. 181; *Pelkington v. Ins. Co.*, 55 Mo. 172; *Baile v. Ins. Co.*, 73 Mo. 371; see also, *Breckenridge v. Ins. Co.*, 87 Mo. 62.

The principle here announced is very well expressed in the second instruction given at the instance of the plaintiffs, as follows:

"2. If the jurors believe and find that, on July 28, 1880, November 8, 1880, and November 24, 1880, said L. C. Miller, referred to in instruction number one, was acting for the Home Insurance Company, at Deadwood, D. T., in the transaction of its insurance business, and that said L. C. Miller had notice of the insurance and delivery on those days to the plaintiffs of the three insurance policies read in evidence, issued by the Mechanics' and Traders' Fire Insurance Company, and by the Springfield Fire and Marine Insurance Company, and by the Watertown Fire Insurance Company, and that said L. C. Miller, made no objection to the issuance of said policies to plaintiffs, and took no steps to cancel the policy of the Home Insurance Company previously issued and now in suit, then the court instructs you that the issuance to and the receipt by plaintiffs of said three last-mentioned policies issued subsequent to July 6, 1880, is no defence to this action, and the jury will so find."

It is unnecessary to notice the instructions given on behalf of the defendant further than to say that they fairly present, with the modifications made by the trial court, the theory of the defence. After careful perusal of the whole evidence in this cause, I am persuaded that the effort of the defendant company was so to arrange matters as to derive all the benefits arising from

the business of insuring property, while endeavoring to shirk many of the burdens and disadvantages incident thereto.

The judgment of the court of appeals is reversed and the cause remanded to that court, and the judgment of the circuit court affirmed, with directions to the court of appeals to enter a judgment of affirmance. All concur, except Ray, J., absent.