[Nos. 5314-5315.]
[Nos. 2952-2953 C. A.]

GERMAN AMERICAN INSURANCE COMPANY v. HYMAN.

GERMAN ALLIANCE INSURANCE COMPANY v. HYMAN.

1. **Insurance—Conditions in Policy—Breach by Tenants—Unknown by Landlord—Known by Agents.**

    Defendants insured plaintiff's building, the policies conditioned to be void if any illuminating gas or vapor be generated in the building, or if any benzine, gasoline, petroleum, or certain of its products be allowed on the premises, unless provided for by special indorsement thereon, and the policies provide that no representative of the insurers had power to waive such conditions, except such waiver be written on or attached thereto.

Tenants of the buildings subsequently insured their stock of goods in one of defendant's companies, the insurance being placed by the same agents, and the latter, without plaintiff's knowledge, issued to the tenants a permit to install a device for the generation of gasoline vapor, which was done without plaintiff's knowledge, and the building was subsequently damaged by fire and explosion. Held, that the installation and use of the gasoline plant with the consent of defendant's general agent did not render plaintiff's policies void, as such knowledge is the knowledge of defendants, and constitutes a waiver of the condition in the policy.—P. 162.

2. Insurance—General Agents—Power to Waive Conditions.

Where insurance agents are furnished with blank policies signed by the president and secretary of the insurance company, with authority to fill out the same, solicit insurance, receive applications and premiums, issue, countersign, renew and cancel policies, they are general agents, and have power to modify a contract of insurance, although it provides that no agent shall have power to waive any restrictive clauses, except where expressly authorized, and in such cases to be waived by writing on or attaching the waiver to the policy.—P. 162.

3. Same — Permit to Tenants — Knowledge of Agents — Presumptions.

Where a permit is issued to tenants by insurance agents to do that which is forbidden in policies issued by the same agents to the landlord a few weeks before, it will be presumed, in spite of such agents' testimony to the contrary, that they had in mind at that time the policies previously issued to the landlord.—P. 164.

4. Insurance—Policies—Waiver of Forfeiture Clause.

Provisions in an insurance policy rendering it void if specified articles are kept on the premises, are for the benefit of, and may be waived by, the insurer.—P. 166.

5. Insurance — Policies — Knowledge of Breach of Condition—Action of Insurer.

Where an insurer has knowledge of a breach of condition in a policy, but continues to treat it as operative and valid, the policy will continue in full force, even though the forfeiture takes place entirely independent of any agency of the insurer or its representative.—P. 167.

6. Insurance—General Agents—Powers.

A general agent's power to make and rescind contracts implies the power to modify the same.—P. 168.

7. **Insurance—Policies—Breach of Condition—Act of Tenant—Knowledge of Landlord—Knowledge of Insurer.**

Where an act forbidden by a landlord's insurance policy is done by his tenant, without his knowledge and consent, but with the knowledge and consent of the insurer, the landlord may enforce the policy.—P. 168.

8. **Insurance—Actions on Policies—Conditions Precedent—Reformation of Policy.**

Where, in an action on an insurance policy, the insurer pleads forfeiture for violation of a restrictive clause, the insured may plead waiver or estoppel without first having the contract reformed so as to embody the waiver.—P. 169.

9. **Insurance—General Agents of Two Companies—Effect of Notice to Agents.**

Where two insurance companies represented by the same general agents are in reality one and the same company, permission by such agents, acting for one company, to a tenant to keep articles on the premises forbidden by his policy on goods in the building, amounts to notice to the other company; and, also, amounts to a waiver by such company of a condition in a policy issued forfeiting the policy if such articles are kept on the premises.—P. 170.

10. **Insurance—"Estoppel in Pais"—Waiver.**

Estoppel in pais is recognized in law as well as in equity, and is employed in insurance law as synonymous with waiver.—P. 171.

11. **Insurance—Causes of Loss—Fire—Explosion—Precedence—Question of Fact.**

Under a fire insurance policy providing that the insurer shall not be liable for loss by explosion, if the fire precedes an explosion and the latter is an incident of the former and caused by it, the insured may recover for his entire loss; but, if the explosion precedes the fire, and is not caused by it, the insured can only recover for the loss by fire; and the question of precedence is one of fact.—P. 172.

12. **Insurance—Action on Policy—Burden of Proof—Cause of Loss.**

When assured has shown the execution of the policy, the loss and amount thereof, and notice to the insurer, the burden is on the insurer to prove that the loss, or a part thereof, is within one of the exceptions in the policy.—P. 172.

13. **Insurance — Action on Policy — Evidence to Sustain Finding—Cause of Loss.**

In an action on an insurance policy, the evidence considered

and held sufficient to sustain the finding of the court that a fire preceded the explosion, and was the cause of the explosion.—P. 173.

14.  Insurance—Loss by Explosion—"Fire"—Words and Phrases.

The word "fire" referred to in a policy rendering an insurer liable for the damage caused by an explosion, under a policy excluding explosions as cause of loss, must be an actual fire according to the common use of the term, and not a blaze produced by lighting a match, gas jet, or lamp.—P. 174.

15.  Insurance—Actions on Policies—Extent of Damage—Burden of Proof.

Where a policy of insurance excludes damages caused by explosion, and the insurer in an action thereon proves that an explosion preceded the fire, the burden is on plaintiff to prove the extent of the damages suffered from the subsequent fire.—P. 176.

*Appeal from the District Court of Lake County.*
*Hon. Frank W. Owers, Judge.*

Action by M. Hyman against The German American Insurance Company and The German Alliance Insurance Company.  From a judgment for plaintiff, defendants appeal.          *Reversed.*

Mr. SYLVESTER G. WILLIAMS, for appellants.

Messrs. FILLIUS & DAVIS, for appellee.

These causes were consolidated for trial in the court below.  They were argued together in this court and are determined by one opinion.

Appellee Hyman, who was plaintiff below, was the owner of a certain brick store building on Harrison avenue, in the city of Leadville.  On August 1st, 1901, and on April 28th, 1902, Wright & Stotesbury, agents of the appellant insurance companies, who were defendants below, issued to him two policies of fire insurance for $2,000.00 each in said companies, respectively.  These policies were the same in form, and were what is known as "New York standard policies."

Each contained the following among other conditions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if  *  *  *  illuminating gas or vapor be generated in the described premises (or adjacent thereto for use therein)."

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if  *  *  *  there be kept, used or allowed on the said above described premises benzine, gasoline  *  *  *  or petroleum, or any of its products of greater inflammability than kerosene oil."

"This company shall not be liable for loss caused directly or indirectly by invasion  *  *  *  or (unless fire ensues, and in that event for the damage by fire only) by explosion of any kind."

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of the agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have power to waive such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The ground floor of the building was occupied as a clothing store by Sands Brothers, tenants of the plaintiff. About the 26th of May, 1902, Wright &

Stotesbury also issued to them a policy in The German American Insurance Company on their stock of goods. This policy was similar in form to those issued to Hyman. Subsequently and about June 21st, 1902, at the request of Sands Brothers, Wright & Stotesbury attached to their policy a written permit for the installation of a certain specified apparatus and device for the generation and use of the vapor of gasoline for lighting purposes on the premises. This apparatus or plant either had already been or was at once installed in the back part of the storeroom.

Neither Sands Brothers nor Wright & Stotesbury communicated to Hyman any knowledge of the granting of said permit to Sands Brothers. Nor did Hyman have any knowledge until after the fire either of the granting of such permit or of the installation of the gasoline lighting plant upon the premises. Hyman's policies remained apparently in full force, and without any intimation from Wright & Stotesbury, or otherwise, until after the explosion and fire, that defendants intended to disclaim liability thereunder.

About 9:30 p. m. on the evening of July 3rd, the building was seriously damaged by fire and explosion. As to whether the explosion took place first and the fire afterwards, or whether the fire preceded and the explosion was an incident thereto, is a matter upon which the parties differ in their conclusions drawn from the evidence. Appellants contend that the explosion occurred first, and that the fire resulted therefrom; appellee contends that the fire was first and the explosion afterwards, as an incident thereto.

Substantially all of the evidence in relation to this specific subject is included within the testimony of three witnesses, Carlson, Snyder and Coble. This testimony is sufficiently stated in the opinion.

As to the extent of the damages, there is some conflict of evidence. But the court below, who tried the case, a jury being expressly waived, found the total amount thereof to be in excess of the $4,000.00 covered by the two policies. There was also evidence upon the subject of the relative proportions of the loss due to the explosion and to the fire, respectively; a witness for plaintiff having fixed the total loss at $4,082.05, on rebuttal attributed one-third of that sum to the explosion; one of defendants' witnesses places the extent of the damage from the explosion at $1,600.00 and from the fire at $1,450.00; another of defendants' witnesses estimates the total damages at $3,800.80, and the loss by fire at $1,769.80.

But the trial court evidently adopted the view that the fire preceded the explosion and that the explosion was an incident thereto, and rendered judgment for the full amount of the policies, holding that the entire injury proximately resulted from the fire.

Mr. JUSTICE HELM delivered the opinion of the court:

1. The first ground relied on for a reversal of the judgment below is that both of the policies in suit were rendered wholly void by the installation and use of the gasoline lighting plant in the building insured; each of said policies prohibiting the generation and use of gasoline vapor on the premises without the consent of the insurer in writing.

Wright & Stotesbury represented both defendants in the city of Leadville. They were furnished with blank policies of insurance duly signed by the president and secretary, with authority to fill out and issue the same; they had power to solicit insurance, to receive applications and premiums, to issue, countersign, renew and cancel policies in that district. They were, therefore, general agents of the

companies and possessed all the authority devolved by law upon such agents. Acting in that capacity, they issued both policies to plaintiff, and also issued the policy to Sands Brothers, who were tenants of plaintiff.

The action of Wright & Stotesbury in suspending the operation of the gasoline provision in Sands Brothers' policy, is not challenged. Defendants themselves make no objection in this regard. They admit that the agency was sufficiently broad for such purpose. And it is not questioned but that Wright & Stotesbury could also have suspended the similar provision in both of plaintiff's policies had they been requested by him so to do.

But plaintiff did not make this request for the very obvious reason that he had no notice or knowledge of the suspension of the gasoline provision in the policy taken out by his tenants, or that a gasoline plant had been installed and was in use on the premises. Yet, it is insisted on behalf of defendants, that the installation of the gasoline plant rendered both of plaintiff's policies void, he having failed to apply to Wright & Stotesbury and procure a suspension of the gasoline clause therein; and that for this reason he is not entitled to recover anything in the present action.

That such a view would, under the circumstances, result in gross injustice as well as hardship to plaintiff, must be admitted; and unless coerced by cogent and persuasive authority so to do, we are not disposed to adopt the same.

The innocence and good faith of plaintiff are not impugned; no bad faith is in any manner imputed to him; he is not even charged with negligence; and, relying on the honor and integrity of defendants and their agents, he honestly supposed his policies invulnerable until they were challenged after the fire.

At the time of granting the suspension of the gasoline provision in Sands Brothers' policy, as well as when issuing the same, Wright & Stotesbury may fairly be presumed to have had in mind the policies previously issued to plaintiff. It is true Stotesbury testifies that when granting the gasoline permit to the tenants it did not "occur" to him that plaintiff had policies of insurance on the building; also that this fact did not "occur" to him until after the fire. But Wright & Stotesbury solicited plaintiff's insurance and issued his policies themselves. From the date of issue of the second policy to plaintiff till the issue of Sands Brothers' policy upon the goods in plaintiff's building, less than four weeks intervened; and less than seven weeks passed between the former date and the suspension of the gasoline provision in the latter policy. Wright & Stotesbury were constantly dealing with this class of policies and were familiar with the gasoline clause uniformly included therein. They must be regarded as aware of the fact that in suspending or waiving this provision they were sanctioning the violation of plaintiff's contracts by his tenants.

It is suggested by counsel in argument that Wright & Stotesbury had no actual knowledge of the fact that their permission was utilized by installation of the gasoline plant. But this, if true, would not be significant; for in granting the permission they must be held to have anticipated the installation. Besides, Stotesbury says, when speaking of the party who applied for the suspension of the gasoline clause, "I knew he would not come in and ask for that permit unless the plant was in there."

Had Wright & Stotesbury notified plaintiff or in any manner called his attention to the suspension of the gasoline provision in his tenants' policy, he would undoubtedly have at once required the removal

of the plant or have made application for a like suspension in the two policies issued to him. And we may assume that such application would have been promptly granted. Counsel for defendants pronounces this assumption a "fallacy." He says that "it is quite as likely" that plaintiff's application, had he made one, would have been refused; he further says "the company had the right to terminate either or both of these policies by cancellation." That is to say, the company, through its authorized agents, first issues the policies for $4,000.00, receiving from the owner of the building the premiums and retaining the same; it then, by and through the same identical agents, gives the tenants permission to install a gasoline plant in the building, which act, without a like permission to the landlord, renders his insurance void; yet it is denied that there was any legal obligation to comply with the landlord's request, had he made such request, for a like suspension of the gasoline provision in his policies. We are not prepared to accept this view of the law; we do not think it has yet received judicial sanction, and are unwilling to take the initiative in giving such sanction.

The knowledge of Wright & Stotesbury was the knowledge of the defendant companies; and their action, under the circumstances, may be presumed to have been the action of those companies. Whatever view we would adopt, were Wright & Stotesbury themselves the insurers, must, therefore, be adopted with reference to these defendants.

Restrictive provisions like the one under consideration are inserted into these contracts for the benefit of the insurer. Forfeitures are not favored in law, and the party for whose benefit they are inserted may always decline to insist upon them. Besides, the fact that these particular insurers in-

tended to sometimes suspend or waive the present ground of forfeiture, is shown by the insertion of an express provision for so doing.

If the action of plaintiff's tenants could, under the circumstances, operate as a forfeiture of plaintiff's policies because of a violation of the gasoline provision therein contained, it was the duty of defendants to notify him of such forfeiture and either suspend the forfeiture provision in his policies, or, if he failed to request such suspension, at least to cancel those policies altogether and inform him of such cancellation. Defendants cannot, under the circumstances, be permitted to remain silent, treating the policies as valid and binding contracts until a fire occurs, and then assert the invalidity of such contracts. For if the insurer has knowledge of a breach of a condition in the policy, but treats it as still operative and valid by failing to assert the right to forfeit and cancel the same, the policy will continue in full force and effect.—*Home Fire Ins. Co. v. Kuhlman*, 58 Neb. 488; *Hamilton v. The Home Ins. Co.*, 94 Mo. 368; *Van Bories v. United Life F. & M. Ins. Co.*, 8 Bush 133; *Cromwell v. Phoenix Ins. Co.*, 47 Mo. App. 109; *Pollock v. German Fire Ins. Co.*, 127 Mich. 460; *Dick v. Equit. Fire & M. Ins. Co.*, 92 Wis. 46; *Phoenix Ins. Co. v. Hart*, 149 Ill. 521; *Viele v. Germania Ins. Co.*, 26 Ia. 9.

Such is the rule, even where the forfeiture takes place entirely independent of any agency of the insurer or its representative. How much more strictly should this rule be applied where, as in the present instance, the alleged forfeiture results from the direct and affirmative action of the insurer's duly accredited agent?

In the cases at bar the alleged violation of the prohibitory clause of the contracts occurred *subsequent* to the issuing of the policies sued on. But the

rule of waiver, or in some instances, where the facts justify, of estoppel, is also applied even to cases where the general agent of the insurer has knowledge of the violation of, or conflict with, such prohibitory clause at the time of issuing the policy; that is to say, the principle is even likewise applied to cases where the breach exists at the very *inception* of the contract.

In *Pomeroy v. Rocky Mountain Ins. and Savings Inst.*, 9 Colo. 295, the facts were, that after a policy of life insurance had been forfeited for non-payment of dues, the general agent of the insurance company permitted the same to be reinstated. When he granted such reinstatement, the agent was fully apprised of the assured's impaired health through intemperance, a condition that rendered the policy void. This court denied the insurer's contention that the policy was thus rendered nugatory, and sustained the recovery thereon. At page 301 the following language is employed:

"Johnson having permitted the renewal of the policy and its issuance with full knowledge of Barton's impaired health by reason of his intemperate habits   *   *   *   having at the time received from plaintiff payment of all back dues necessary to its renewal, and thereafter payment of premiums on the policy as they became due, is to be regarded as having waived the condition respecting the impairment of health of the insured by intemperate habits. The company cannot be allowed to treat the contract as valid for the purpose of collecting dues and as void when it comes to paying the insurance; or, as otherwise stated, 'the company cannot be permitted to occupy the vantage ground of retaining the premium if the party continued in life, and repudiating it if he died.' "—*Bank v. Life Ins. Co.*, 52 La. Ann. 36; *Georgia Home Ins. Co. v. Kinnier*, 28 Gratt. 88;

*Shafer v. Phoenix Ins. Co.,* 53 Wis. 361; *Phoenix Ins. Co. v. Hart, supra; Improved Match Co. v. Ins. Co.,* 122 Mich. 263; *R. I. Underwriters' Assn. v. Monarch for use, etc.,* 98 Ky. 308; *Mutual Ins. Co. v. Ward,* 95 Va. 231.

Nor does the presence of a provision in the policy that no officer or agent shall have power to waive any of the restrictive clauses except where such waiver is expressly authorized, or that such waiver, when permissible, shall in no case be effective unless written upon or attached to the policy, change or modify the foregoing conclusions.    The general agent's power to make and rescind contracts implies the power to modify the same.    The insurer is estopped from asserting a forfeiture on the ground of such agent's want of authority to waive the forfeiture or because of absence of the formal written indorsement upon the instrument suspending the prohibitory provision.—*Farmers and Merchants Ins. Co. v. Nixon,* 2 Colo. App. 266; *Northam v. International Ins. Co.,* 45 N. Y. App. Div. 177; *Niagara Ins. Co. v. Lee,* 73 Tex. 641; *Phoenix Ins. Co. v. Munger,* 49 Kan. 194; *James v. Mutual Assn.,* 148 Mo. 10; *Phoenix Ins. Co. v. Hart, supra; Dick v. Equit. F. and M. Ins. Co., supra; Shafer v. Phoenix Ins. Co., supra; Viele v. Germania Ins. Co., supra; Lamburton v. Ins. Co.,* 39 Minn. 129.

The principle urged by defendants, and sometimes recognized, that the assured cannot maintain his action by showing that the violation of the contract was an act of his tenant without his consent or knowledge, has no application to the case at bar. Plaintiff in this case does not rely solely upon the fact that the alleged violation of his policies resulted from the act of his tenants.

The principle mentioned applies only where the tenant, without the *consent or approval* of the

*insurer* commits some act in derogation of his land-
lord's policy. No court would hold the same appli-
cable to a case where the insurer, without notice to
the landlord, expressly gives the tenant permission
to commit the act forbidden by the landlord's policy.
To so hold would be to sanction a gross injustice and
open the door to fraud. It would be to announce a
rule inconsistent with the authorities and sure to
create universal surprise and protest.

Nor is the argument advanced by defendants
sound, that plaintiff must first go into equity and
have the contracts reformed so as to embody the
waiver or suspension of the prohibitory clause in
question. When to plaintiff's action upon the con-
tract the insurer pleads a forfeiture for violation of
a given restrictive clause thereof, plaintiff may plead
in reply facts constituting a waiver of such forfeiture
or an estoppel with reference thereto. This is not
bringing in by replication a new and different cause
of action.

There is no attempt to reform the policy and rest
the recovery upon a new or different contract. The
action remains upon the original contract; the repli-
cation simply shows that defendant has no right to
plead or rely upon the alleged violation of that con-
tract. And if plaintiff recovers, he recovers upon
the contract as it was originally written. Defendant
simply is not allowed to establish the asserted for-
feiture or violation and thus defeat the recovery.

This view is not inconsistent with *Thompson v.
White,* 25 Colo. 226, cited by defendants. In that case
the action was originally brought against two indi-
viduals. The replication attempted to plead ground
for relief against a partnership. And it is needless
to say that a right to recover against an individual
and a right to recover against a partnership are two
separate and distinct causes of action.

We have not deemed it necessary in the foregoing discussion to consider the distinction based upon the status of the two defendant companies, urged by their counsel. This alleged distinction rests upon the fact that the suspension of the gasoline provision was made by The German American Company by which Sands Brothers' policy was issued; and that The German Alliance Company issued no policy to Sands Brothers and itself granted no suspension of a gasoline restriction in any such policy.

The conclusion may fairly be drawn from the evidence that defendants, while separate corporate entities and with slightly different names, are, in reality, one and the same company; or at least, that for the purposes of determining the present question they should be treated as if they were the same company. The German Alliance was called the ''baby company'' of the German American. The two companies were ''associated together in their operations.'' Wright & Stotesbury were appointed agents ''under the same authority'' and they ''made reports to the same persons back in New York.'' When asked if he did not inform plaintiff that they ''were practically one and the same company,'' Stotesbury was not prepared to say that he did not. Jessup, the adjuster, was also the agent of both companies, with broad and extensive powers; he represented them both after the fire in negotiations with plaintiff for a settlement under both of the policies.

Moreover, Wright & Stotesbury were, as we have seen, the general agents of both of these companies; their knowledge and conduct were the knowledge and conduct of the companies. And we have no hesitancy in declaring that good faith required them to notify plaintiff of the permission granted his tenants to install the gasoline plant, and give him

an opportunity to cause its removal or to apply for like authority under his policies. In view of all the circumstances, the action of Wright & Stotesbury in granting the Sands Brothers' application, without notice to plaintiff, operated as a waiver or as an estoppel on the part of both defendants. They could not remain silent, allowing plaintiff to rest securely in the belief that his policies were good, until the property was destroyed by fire, and then assert the invalidity thereof.

It may be proper to suggest, in this connection, that estoppel in pais, like waiver, is recognized at law as well as in equity; also that waiver and estoppel in pais are often employed in insurance law as synonymous terms and used indiscriminately.

Counsel for plaintiff urge that the conduct of Jessup, the adjuster, while acting for defendants after the fire, constituted a waiver of the forfeiture, if a forfeiture took place. There is plausibility in this contention, viewed in the light of some of the recent and able decisions. But in view of the foregoing conclusion it is unnecessary for us to consider this subject in the present opinion. And we prefer to leave the same open for full investigation and decision at some future time.

2. We come now to the second proposition urged by defendants for a reversal of the judgment under consideration. Plaintiff's policies contained, among other provisions, a declaration that the insurer would not be liable for loss caused directly or indirectly by explosion of any kind unless fire ensued, and in that event for damage by the fire only.

The evidence clearly shows that a portion of the damages suffered resulted from the explosion. And defendants contend that by virtue of the above provision in the policy, they are at least relieved from liability for this part of the loss; that at most they

can only be held to the extent of the injury caused by the fire alone.

If the fire preceded the explosion and the explosion was an incident thereto, the fire was the direct or proximate cause of the injury by the explosion, and plaintiff was entitled to recover for his entire loss. But if the explosion preceded the fire and was not caused by it, plaintiff can, under the express terms of the policy, only recover for that proportion of the damages resulting from the fire alone. This construction is well established; there seems to be no serious conflict of authority in relation thereto.—*Waters v. The Merchants L. I. Co.*, 11 Peters *225; 2 May on Insurance 413; 3 Joyce on Insurance, § 2593; Ostrander on Fire Ins., § 325; *Washburn v. Artisans Ins. Co.*, 9 Ins. L. J. 68.

But obviously the precedence of the explosion or of the fire is a question of fact; it depends upon and can only be determined by the evidence. And we must pursue this inquiry by reference to that portion of the record.

The rule as to the burden of proof on this subject may be stated as follows: When the assured has shown the execution of the contract, also the loss together with the amount thereof, and notice to the insurer, the burden is on the insurer to prove that the loss, or a part thereof, is within one of the exceptions stated in the policy. It is hardly necessary to cite authorities upon this proposition. It is strictly in harmony with recognized rules for the construction of contracts, and defendants do not controvert it in their brief. Suit being brought upon the contract, it is for the insurer, who resists the recovery, to plead the exception upon which he relies and to sustain the plea by appropriate proofs.

It follows that in the cases at bar the burden was on defendants to aver and prove that the loss or

some portion thereof was within the foregoing exception. That is to say, the burden was upon defendants to show that the explosion preceded the fire and that some portion of the loss sued for was occasioned by the explosion and not by the fire.

There is no evidence in the case tending to show that a fire existed on the premises prior to the explosion. An inference may, perhaps, be drawn that something ignited the gasoline vapor and caused the explosion, but as to precisely what was such igniting agency does not appear. It was 9:30 p. m. in July. There was no fire in the stoves for heating purposes. There were some electric lights, but no actual combustion appeared to be taking place, save that arising from the use of illuminating lamps.

On the other hand, all the testimony on the subject is to the effect that the fire was first seen after the explosion and tends to show that it was caused by the explosion.

Carlson, who was a salesman attending to his duties in the store, had the best opportunity of any witness called to know the fact in this regard. He was standing in the middle of the room and in full view of the rear portion thereof where the fire was first discovered. He noticed no smoke or odor such as would be produced by a living or smouldering flame. He says: "I don't think there was any fire in the building before the explosion occurred." Again, "There was no fire in there to my knowledge, of any kind. The first thing I knew of the accident was the explosion." And again, "I got out of the building before the fire occurred." Yet he had from 35 to 50 feet to go before reaching the sidewalk.

Carlson is corroborated in this particular by the other two witnesses who testified on the subject. Neither of them was in the store, but they both heard the explosion; and both rushed into the street as

quickly as possible thereafter. At first the building appeared to be dark, as the lights had been extinguished; but a few seconds afterwards the fire blazed up at the rear end of the store room.

Fire is often the result of gasoline explosions; it usually follows quickly after the explosion; and this is especially true where inflammable materials like goods in a clothing store surround the exploding vapors.

If any testimony had been received tending to show that a fire preceded and caused the explosion, thus creating a conflict of evidence upon this subject, we would probably regard the decision of the trial court as controlling. But under the circumstances, we must conclude that he adopted an erroneous view of the law or misconceived the effect of the evidence. Governed by this evidence—as, of course, we must be—we can come to no other conclusion but that the explosion produced the fire and was not itself a mere incident to, or result of, a preceding fire.

In this connection a further consideration must be borne in mind. The "fire" referred to in the provision of the policies under consideration is an actual fire, according to the ordinary and common use of the term. The blaze produced by lighting a match or gas jet or lamp is not such a fire as is contemplated. And the accidental igniting of gas by such means, resulting in an explosion, does not, within the language of the contract, render the explosion an incident to a fire.

In *Mitchell v. Potomac Ins. Co.*, 183 U. S. 42, it appeared that employees were in the habit of lighting a match when searching for articles in a certain portion of the basement. The evidence showed, or tended strongly to show, that the explosion was caused by the blaze from such a lighted match coming in contact with gasoline fumes. The identical question

now under consideration was raised in that case under a similar provision in the policy. The court at the trial, among other instructions, gave the following:

(2) "If an explosion occurred from contact of escaping vapor with a match lighted and held by an employee of the plaintiff, and the loss resulted solely from such explosion, the verdict must be for the defendant."

(3) "A match lighted and held by an employee of the plaintiff coming in contact with vapor and causing an explosion is not to be considered as fire within the meaning of the policy."

These instructions were upheld by the court. That learned tribunal, referring thereto, at page 52 says:

"We think each instruction was correct. A loss occurring solely from an explosion not resulting from a preceding fire is covered by the exception in the policy. And an explosion which occurred from contact of escaping vapor with a lighted match, under the facts stated, would also plainly come within the exception of the policy. Also a lighted match is not 'fire' when used as stated in the above third clause of the charge."

Further sustaining the construction that in order to be within the meaning of the contract the ignition of the explosive substance must be caused by an actual combustion involuntarily or illegally started, termed by some of the authorities a "negligent or unlawful" fire, and not by a harmless combustion, such as a lighted cigar, the burning of gas jets, the lighting of matches, reasonable fire in a stove for heating purposes, and other "innocent" fires, see the following additional authorities.—Ostrander on Fire Ins. (2d ed.), § 325; May on Ins. (4th ed.), § 416a; *United Fire Ins. Co. v. Foote*, 22 Ohio St. 340;

*Renshaw v. Fireman's Ins. Co.,* 33 Mo. App. 401; *Briggs v. Ins. Co.,* 53 N. Y. 449; *Transatlantic Fire Ins. Co. v. Dorsey,* 56 Md. 70.

Defendants then having shown that in this instance the explosion preceded and caused the fire, it became necessary to determine what proportion of the resulting injury was produced by such fire. For, as we have seen, by the terms of the contract, compensation can be recovered only for the damages thus caused. And upon this issue, viz: discriminating between the damages caused by the explosion and those caused by the fire, and showing the extent of loss resulting from the fire, the burden devolved upon plaintiff. That is to say, defendants having shown that the explosion occurred first in point of time, the burden shifts to the plaintiff and it becomes his duty to prove the extent of the damages suffered from the subsequent and resulting fire.

"When policy in terms assumes damage by lightning, but excludes that caused by cyclone or wind or tornado, the burden rests upon the assured to show just what damage was caused by the lightning, exclusive of the wind; both claim and recovery must be confined to the actual direct damage caused by the lightning."—Clement on Fire Ins., 126 rule 8 and cases cited.

"The testimony seems to show some injury by lightning and they claim damage was also caused by wind. In order to recover under the terms of the policy it was incumbent upon the plaintiff to distinguish the two elements of damage. For that resulting from the lightning he had a right to recover; but for that which was caused by the wind, there was no liability whatever upon the part of defendant."—*Warmcastle v. Ins. Co.,* 201 Pa. St. 304.

In *Beakes v. Phoenix Ins. Co.,* 143 N. Y., defendant requested the court to charge the jury:

"That if lightning struck the building and did some damage and the wind came on and did the main damage, the jury must strictly confine their verdict to the actual damage done by lightning, but cannot give a verdict for damage done by wind."

The supreme court of New York declares that the refusal to give this instruction was error, and at page 407 says:

"The lightning clause of the policy already quoted is very carefully worded and limits the liability of the company to direct loss caused by lightning, and expressly excludes damage by cyclone, tornado or wind storm. It must be admitted that the duty of a jury in cases of this character is difficult to perform. If a building is shattered by a lightning stroke, but not prostrated, and a moment later a high wind completes the work of destruction, it is not by any means an easy task for counsel to prove the plaintiff's case, or for the jury to determine the amount of recovery and apportion the loss between lightning and wind. Courts are required, however, to enforce contracts as drawn by the parties, and under this lightning clause in the standard policy, juries must be required to limit the recovery of plaintiffs to the direct loss or damage caused by lightning."

Of course, it is not necessary for us to consider the fact that in the cases last above referred to, the clause of the policy under consideration allows a recovery for damage done by lightning, but prohibits the same for damage done by wind; whereas, the clause of the policies sued on in the cases at bar makes the insurer liable for damage done by fire, but excludes liability for that resulting from explosion, unless the explosion ensues from a fire. Obviously the construction in this particular, applied in one

class of cases, is equally applicable to the other class of cases.

The witnesses in these cases succeeded in making this discrimination. But their testimony as to the extent of the damages resulting from the fire is conflicting. And as the trial court failed to resolve this conflict, wrongfully adjudging the entire loss against defendants, we must reverse the judgment and remand the cause for a new trial.   *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concurring.